WARREN ALDRICH *vs.* INHABITANTS OF GORHAM.

Cumberland. Opinion April 20, 1885.

*Ways. Defects. Proximate cause. Horse suddenly shying.*

In order to render a town or city liable on account of an accident happening on a highway, it must appear that the defect in the way was the sole cause of the injury.

If any other efficient, independent cause, for which the town is not responsible, contributes directly to produce such injury, the town or city is not liable.

Whether the fright or misconduct of the horse is such as to be regarded as the true and proximate cause of the injury, in any given case, is to be governed by the extent of such misconduct.

If a horse well broken and adapted to the road, while being properly driven, suddenly swerves or shies from the direct course, he is not in any just sense to be considered as escaping from the control of the driver, or becoming unmanageable, if he is, in fact, only momentarily not controlled.

If while thus momentarily swerving or shying he is brought in contact with a defect in the road and an injury is thereby sustained, such conduct of the horse will not be considered as the proximate cause of the accident.

On exceptions from the superior court.

An action to recover for personal injuries received by reason of a defect in a way. The verdict was for the defendants and the plaintiff alleged exceptions. The material facts are well stated in the opinion.

*S. C. Strout* and *F. M. Ray*, for the plaintiff.

*Strout and Holmes*, for the defendants.

Foster, J. This case is before the court upon exceptions and a motion to set aside the verdict, rendered for the defendants, accompanied by a full report of the evidence.

The plaintiff with horse and open express wagon was traveling from Buxton to Saccarappa, and at about four o'clock in the morning in September, was passing over a bridge in the town of Gorham, when, as he claims, his horse suddenly shied to the left, and in so doing broke through the bridge, struggled, and together with the wagon went over the railing into the stream below ; that at the moment the horse broke through, on account of the sudden stopping of the carriage, he was thrown forward from his seat over the bridge, and fell near the foot of the abutment, sustaining severe personal injuries, in which situation, he was found in a nearly unconscious condition, and for the injuries thus received this action was brought.

The bridge over which the plaintiff was passing, and near the easterly end of which this accident is alleged to have occurred, was about twenty feet in length by eighteen in width, twelve

feet above the bed of the stream, having a railing upon each side, and covered with one thickness of plank, thereby rendering the surface uniform the entire width between the rails.

That the plaintiff received severe bodily injury, and that the bridge was defective by reason of the covering having become badly decayed and rotten at the place where it is alleged the horse shied and broke through, there can be little reason to doubt, if we are to judge from the testimony in the case.

One of the principal positions relied upon in defense was, that, taking the plaintiff's statement to be true, if the way was defective at that particular point, and the injury was received by the plaintiff as claimed, such injury was not occasioned by the defect alone, but by some other cause contributing to produce it ; in other words, that it was produced by the shying of the plaintiff's horse, occasioned by the movement of a bird in the bushes which caused the horse to shy or jump several feet from the usually travelled part of the bridge, and, coming upon the weakened and defective place in the covering, floundered and went over the railing.

Assuming this to be true, and the fact to be as claimed by the plaintiff, the shying was momentary, followed the next instant by the accident. The testimony discloses no want of care on the part of the plaintiff up to the very moment when the horse shied ; moreover the plaintiff testifies that the horse was under his control. With no premonition of what was to occur, "all of a sudden he jumped to one side," and in so doing came in contact with the defect in the bridge of which the proper officers had sufficient notice.

It is undoubtedly the law of this state, as settled in a line of decisions from *Moore* v. *Abbot*, 32 Maine, 46, to the present time, that in order to render a town or city liable on account of an accident happening on a highway, it must appear that the defect in the way was the sole cause of the injury. If any other efficient, independent cause, for which the town is not responsible, contributes directly to produce such injury, the town or city is not liable. Some portion of the harness, or

carriage, may be defective and unsafe, and the accident may be the combined result of the defect in the harness or carriage, and the defect in the way; in such case there is an efficient co-operating cause, in connection with the defect in the way, that produces the injury, and the town is not rendered liable. The same principle applies where a horse, becoming frightened at an object for which the town is not responsible, breaks away from his driver and escapes from all control, while traveling on the way, and afterwards, while thus free from the management and control of the driver, meets with an injury through a defect in the way. *Davis* v. *Dudley*, 4 Allen, 557; *Moulton* v. *Sanford*, 51 Maine, 127. Where such is the fact it can not be said that the defect in the way is the sole cause of the injury. There are other efficient, co-operating causes which combine to produce the accident, and which may be regarded as much the true and real cause of the accident as the defect in the way.

But whether the fright or misconduct of the horse is such as to be regarded as the true and proximate cause of the injury, in any given case, is to be governed by the extent of such misconduct. It may in some remote degree even bear upon or influence, though not in any legal sense be said to cause it. "Everything which induces or influences an accident," says Chief Justice PETERS, in the very recent case of *Spaulding* v. *Winslow*, 74 Maine, 534, " does not necessarily and legally cause it." And not only is it the doctrine of the court in our own state, but also in Massachusetts, that if a horse well broken and adapted to the road, while being properly driven, suddenly swerves or shies from the direct course, he is not in any just sense to be considered as escaping from the control of the driver, or becoming unmanageable, if he is in fact only momentarily not controlled; and that if while thus momentarily swerving or shying he is brought in contact with a defect in the road and an injury is thereby sustained, such conduct of the horse will not be considered as the proximate cause of the accident, though it may be one of agencies or mediums through which it was produced, and a recovery may be had for such injury. This doctrine is not at variance with that laid down in *Moulton* v. *Sanford*, 51 Maine,

127, or *Perkins* v. *Fayette*, 68 Maine, 152, in both of which there were two independent, efficient, proximate causes of the accident; and it is in harmony with that of *Spaulding* v. *Winslow*, *supra*, and with the decisions of the Massachusetts court. *Titus* v. *Northbridge*, 97 Mass. 258; *Stone* v. *Hubbardston*, 100 Mass. 55; *Bemis* v. *Arlington*, 114 Mass. 508; *Wright* v. *Templeton*, 132 Mass. 50.

While these principles may be regarded as well established, the difficulty which sometimes arises is in their application to the circumstances of particular cases; especially true is this when the occurrences out of which the accident arose, as in this case, are almost instantaneous.

The plaintiff's exceptions, in the case at bar, relate to that portion of the charge in which the court speaks of the fright and shying of the horse; and herein we think the plaintiff's rights before the jury were more or less prejudiced. The instructions which they received were, in substance, that if the plaintiff's horse frightened at some bird or animal, for which the town was not responsible, without fault of the driver, shied from the regular line of travel, and went over the bridge, or into a hole, and an injury was thereby received, the town was not liable, on the ground that the primary cause of the accident was not the defect in the way.

This statement, without qualification, we think was too broad. It was not qualified either in reference to whether the shying was sudden, momentary, or otherwise, or as to the distance of such shying or swerving from the regular line of travel, but was absolute and unqualified that the town would not be liable, and that it would be a primary cause of the accident. Whereas, it is not every sudden, momentary starting or shying of a horse, properly driven, or momentary loss of control by the driver, that will constitute a primary or proximate *cause* of accident, when a defect in the way is thereby, at the same moment encountered and an accident happens. The evidence in the case upon which the instructions were based was not such as to show that the horse had broken away and escaped from the management and control of the driver previous to coming in

contact with the defect, and as CHAPMAN, J., said in *Titus* v. *Northbridge, supra*." a horse is not to be considered as uncontrollable that merely shies or starts, or is momentarily not controlled by the driver." Though possibly swerving a few feet from the line of travel, the horse, at the point where he broke through, was nevertheless upon that portion of the bridge equally as inviting and accessible to travel as any part of it.

In the opinion of the court in *Spaulding* v. *Winslow, supra*, which had not been announced at the time of the trial in this case this principle is expressed thus: "If, however, the horse while being properly driven, upon sight of the hole suddenly started or shied, and swerved or sheared a few feet from the direct line of travel, and, through only a momentary loss of control by the driver, threw the wagon into the ditch on account of the want of a railing, and the road was defective for the want of a railing, in such case the misadventure of the horse should not be considered as causing the accident." See also, as in accordance with what is here expressed, *Wright* v. *Templeton*, 132 Mass. 50.

This portion of the charge, taken in the connection in which it is found, is not aided by the preceding hypotheses wherein the term "manageable," as applied to the horse at the time of the shying, was not explained or defined fully in accordance with the principles of law applicable in cases of this kind. The jury may have inferred that want of control even momentarily, was such unmanageableness as would exempt the town from liability. We think that the instructions were not such as to enable the jury to decide the case understandingly.

*Exceptions sustained.*

PETERS, C. J.; WALTON, VIRGIN, LIBBEY and EMERY, JJ., concurred.