## Cox v. Illinois Central Railroad Co.

(Decided February 28, 1911.)

### Appeal from Marshall Circuit Court.

1. Railroads—Duties and Liabilities When Engine is Standing at Crossing.—It is not necessary that an engine should be removed further from a crossing than is required to leave it free for travel, unless it should be brought to the attention of the trainmen that it is necessary to permit the use of the crossing; and in such a case they should remove it as far as they can with due regard to the safety of the train and the persons connected with or on it.

2. Same.—When an engine is stopped clo e to a point where a public road crosses a railroad, it is the duty of the persons in charge of the engine to exercise reasonable care consistent with the safety of the persons and property on the train to prevent unusual or unnecessary noises to be made by the engine, whether they see or do not see a traveler with a horse on a public road approaching the crossing; or, if they do see one, without reference to whether his horse is frightened or not.

3. Same—When an engine is standing near a crossing that the public have a right to use, the presence of travelers on it must be anticipated; and if the engine is permitted by those in charge of it to make unusual or unnecessary noises, unless the safety of the persons or property on the train require it, and the horse of a traveler is frightened thereby, the company will be liable, unless it be that the traveler is guilty of such contributory negligence as would defeat a recovery.

4. Traveler—Duty Of.—When a traveler approaching a crossing near which an engine is standing, knows that it is making noises and letting off steam, and he is apprehensive that if he attempts to cross his horse will become frightened, he should not attempt to do so, without notifying in some way the persons in charge of the engine or train that he desires to cross. And if they can, by the exercise of reasonable care, and with safety to persons and property, prevent the noises, they should do so. But if this can not be done, the traveler must remain in a place of safety or take the risk of attempting to cross.

MILLER & MILLER and JOHN G. LOVETT for appellant.

OLIVER & OLIVER, BLEWETT LEE, C. L. SIVLEY and TRABUE, DOOLAN & COX for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In July, 1909, the appellant, Mrs. Cox, while driving in a buggy on a public highway, discovered a freight train standing on the crossing over which she desired to pass. Upon making this discovery, she stopped her horse some three hundred feet from the railroad crossing, and, getting out of the buggy, walked down to the track for the purpose of getting the men in charge of the train to "cut it" or move it off the crossing, so she could go on her way. When she reached the train, she discovered on the other side of the cars a person, not connected with the railroad, whom she knew, and asked him to tell the engineer to clear the crossing, and then went back to her buggy. When the crossing was cleared, Mrs. Cox got in her buggy, and when she drove down to the track her horse became frightened, and attempted to

turn around, when he was caught by a person standing nearby and led off the track. The buggy was not turned over, nor was Mrs. Cox thrown out of the buggy. But, claiming that her back was injured by the act of the horse in turning the buggy partly around, she brought suit against the company to recover damages, charging in her petition that her injuries were caused by the negligent conduct of the agents of the company in charge of the train, who by their failure to use reasonable care caused her horse to be frightened with the result that she was injured as stated.

In its answer, after traversing the material averments of the petition, the company pleaded that the appellee was guilty of contributory negligence in attempting to cross the track in front of the engine, when she knew that steam and noise were escaping therefrom.

A trial before a jury resulted in a verdict in favor of the railroad company, and a judgment was entered accordingly. The errors assigned for reversal are that the court misinstructed the jury.

The only witnesses on behalf of the appellee were herself and her husband. She testified:

"I got in my buggy and drove towards the track. When I got near, the engine was making a good deal of noise, and I asked if they were ready for me to pass, and the boy on the engine signalled for me to pass, but the fireman did not get out of his seat. I drove a little way, and the steam frightened my horse, * * * and the engine was puffing, and shrieking, and puffing, and letting off steam, it seemed to me at every possible place for steam to be let off. Q. State what noise it was making when it stopped south of the crossing after it had backed over the crossing? A. It was howling and shrieking in every place there is for steam to escape. Q. You say you saw the train back down beyond the crossing? A. Yes, sir. Q. That engine was escaping steam at the time, was it not? A. Yes, sir."

The husband of Mrs. Cox, who at the time in question was a farmer but had several years before been a railroad engineer, was asked:

"What is the proper method with railroad men, if you know, regarding the stopping of an engine at a crossing?" He answered: "An engine should not be allowed to escape steam that way; an engineer can prevent it if he will. Q. Do you mean that an engine can be stopped

without popping off? A. Yes, sir, it can be done. Q. Can it be done without putting cold water in it? A. Well, that is the proper way to do it. Q. Can he do it without reducing the pressure? A. No, sir. Q. When a train is to leave immediately, is it necessary to have steam up all the time? A. Not to the extent that the engine will make unnecessary noise. Q. Can you keep up the pressure without allowing it to pop off? A. Well, when the pressure gets to a certain point the safety valve will pop off.''

The engineer testifies that he had a train of twenty-five cars and had been on the side track only a few minutes when some person asked if he would have the crossing cleared, and in answer he signalled his fireman, who was also an engineer, to ''back up,'' and thereupon the fireman backed the engine off of the crossing. He further testifies that the engine was popping off steam from the time he pulled in on the side track, and was only making the usual and necessary noises that an engine that has been pulling a heavy train will make when it is stopped. That there was no steam escaping except the popping off, but that could have been controlled and lessened if he or the person in charge of the engine had notice that it would cause the horse to be frightened, but that he had no information of this kind until after the fright of the horse was discovered, and it was then too late to regulate the engine.

The fireman testified that some person called to him and told him to clear the crossing, and that he did not see Mrs. Cox or her horse at the time or know who it was that wanted to cross until after the horse became frightened. That when signalled to clear the crossing, he backed the engine over it and stopped about fifty-eight feet from it, and that steam was escaping in the same manner from the engine and it was making the same amount of noise from the time it stopped until appellee's horse became frightened. That when he stopped the engine after clearing the crossing, he went over on his side of the cab, and then for the first time saw Mrs. Cox, approaching the crossing from that side of the engine. That when he first saw her, she was close to the track, and observing that her horse was frightened, he stepped over to the engineer's side with the intention of putting on the injector to reduce the steam pressure, but upon reflection abandoned this purpose because the

injector would have caused more steam to escape for a moment and would have frightened the horse more than did the steam already escaping. He also 'testified that when he went over to the engineer's side, he at once looked out and discovered some person had hold of the horse and he was under control.

From this evidence it appears (1) that soon after Mrs. Cox got in her buggy for the purpose of driving across the track, and continuously until her horse became frightened, the engine was making the same quantity of noise and emitting the same amount of steam; and that Mrs. Cox with full knowledge of this fact left a place of safety and attempted to drive across the track without first requesting the persons in charge of the engine to remove it further from the crossing or so adjust it as that it would not make so much noise or emit so much steam. (2) That the fright of her horse was not discovered by the persons in charge of the engine until it was too late to remedy or remove the causes that frightened the horse, and that immediately after the horse became frightened he was caught and put under control. (3) That the noise and emission of steam was not unusual or unnecessary, but could have been lessened if the persons in charge of the engine had been apprised that it was necessary to do so.

But, it is insisted that it was the duty of the persons in charge of the engine to have moved it a sufficient distance from the crossing to avoid frightening horses using the public road at or near where it crosses the railroad, or to have so regulated the engine as that it would not have made noises or let off steam in a manner calculated to frighten horses at the crossing. We do not think that a railroad company should be required to remove its engine further from a crossing than is reasonably necessary to permit the free use of it for travel; but if an engine is standing close to a crossing, the trainmen upon being notified that the presence of the engine renders the crossing dangerous or unsafe for travel, should remove the engine as far as can be done with safety to the train and the persons on or connected with it. The railroad has the right to use its tracks, and the public have the right to use the crossing, and each should act with due regard for the rights of the other. The trainmen should accommodate the traveler when it can be done with safety, and the traveler should respect the

rights of the trainmen and not attempt to subject them to unnecessary or unreasonable trouble or inconvenience. But when an engine is standing close to a point where a public road crosses a railroad, it is the duty of the persons in charge of the engine, when the safety of persons and property on the train does not require it, to prevent unusual or unnecessary noises to be made by the engine, whether they see or do not see a traveler with a horse on the public road approaching the crossing; or, if they do see one, without reference to whether his horse is frightened or not. If an engine is standing near a crossing that the public have the right to use, the presence of travelers on it must be anticipated; and if the engine is permitted by those in charge of it to make unusual or unnecessary noises, unless the safety of persons or property require it, and the horse of a traveler is frightened thereby and injury results, the company will be liable whether the persons in charge of the engine saw the traveler or not, or knew he wanted to cross, unless it be that the traveler is guilty of such contributory negligence as would defeat a recovery. On the other hand, when a traveler approaching a crossing near which an engine is standing, and before his horse becomes so much frightened as to cause accident or injury, sees and knows that it is making noises or letting off steam, although either or both may be unusual and unnecessary, he should not attempt to approach the engine or cross the track without notifying in some way the persons in charge of the train or engine that he desires to cross and that his horse is liable to become frightened. If he does this, and the persons in charge of the engine can with safety to persons and property prevent the engine from making noises or letting off the steam that alarmed the traveler and were calculated to frighten the horse, they should do so. But if they do not or can not with safety do so, then the traveler must remain in his place of safety or take the risk of attempting to cross. What we have thus said as to the reciprocal duties and liabilities of the traveler and the trainmen is not intended to relieve the company from liability in blocking a crossing for an unreasonable length of time or in violation of the statute. If this is done, the traveler may have an action for the delay occasioned, and the Commonwealth a prosecution, but a traveler must not venture into a known or obvious danger, if he does he takes the risk.

Applying the principles laid down to this case, the appellee knew the engine was letting off steam and making noises when she left her place of safety; but, notwithstanding this fact, she attempted to cross. Her statement that she asked if they were ready for her to pass, and was signalled to do so, does not help her case, as she did not ask and was not responded to by any person connected with the train, and in addition, her request was no notice that the engine would frighten her horse. The persons in charge of an engine are not required to keep a lookout on premises or roads adjacent to the track for the purpose of discovering whether or not horses are being frightened by the train or engine, and are only under a duty to use precautions to prevent frightening a horse after they have discovered his fright. But, in this case, if the trainmen had been keeping a lookout, they would have seen that the appellee's horse in approaching the track did not become frightened until he came within a few feet of the track upon which the engine was standing, and when it was too late to remove the cause of the fright. L. & N. R. Co. v. Penrod, 24 Ky. Law Rep., 50; L. & N. R. Co. v. Smith, 107 Ky., 178; L. & N. R. Co. v. McClandess, 123 Ky., 121; L. & N. R. Co. v. Streets' Admx, 139 Ky., 186.

The instructions the court gave do not in all particulars conform to the law as we have announced it, but any error in the instructions was not prejudicial to appellant, because we are of the opinion that her negligence in leaving her place of safety and in attempting to drive across the track was the proximate cause of the injury she complains of, and that the trial court should have given as requested by counsel for the railroad company a peremptory instruction to find for it.

The point is made that the train remained an unnecessary length of time on the crossing in violation of the statute, but there is no evidence whatever to support this contention; nor was a recovery sought on account of this alleged negligence.

Wherefore, the judgment is affirmed.