## CITY OF MUSKOGEE v. MILLER.

No. 3792.   Opinion Filed December 22, 1914.

Rehearing Denied January 26, 1915.

(145 Pac. 782.)

1.   MUNICIPAL CORPORATIONS—Streets—Safe Condition—Duty. It is the duty of a municipal corporation to keep its streets in a reasonably safe condition for ordinary travel by the public.

2.   MUNICIPAL CORPORATIONS—Defective Streets—Personal Injuries—Liability. Where a person is riding upon a well-broken horse ordinarily sure of foot, not at an unusual speed, and such animal, wihout fault on the part of the rider, becomes frightened and temporarily unmanageable, and, by reason of coming in contact with a defect in a street negligently created or permitted to remain therein by a city, falls and injures such rider, the municipality is liable therefor.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*

*R. P. De Graffenried, Judge.*

Action by William L. Miller against the City of Muskogee. Judgment for defendant, and plaintiff brings error. Affirmed.

*S. V. O'Hare* and *J. C. Davis,* for plaintiff in error.

*Thomas H. Owen* and *Joseph C. Stone,* for defendant in error.

BLEAKMORE, J.   This case presents error from the district court of Muskogee county, and is an action brought by the defendant in error against the city of Muskogee for damages for personal injuries sustained by reason of being thrown from his horse or a public street of the defendant city, resulting in a judgment in his favor of the sum of $2,500, from which the city appeals.

The parties will be referred to here as they appeared in the court below:

Plaintiff alleged:

"That Market street is one of the public streets of the said city of Muskogee, and that it is, and has been at all the times herein mentioned, the duty of said city to keep its streets in a safe condition for travel. That in violation of its duty as aforesaid, on about the 25th day of April, 1910, and for a long time prior thereto, the said city knowingly permitted a large hole, or excavation, of the width of about 10 feet, of the length of about 30 feet, and to the depth of about 2 feet, to be made and to exist on said Market street beginning about 30 feet north of Fourth street, and extending thence north, which hole or excavation was, during all of said times, full of mud and bricks, and large slick rocks, which bricks and rocks had been negligently placed in said hole by the said defendant. That on or about the 25th day of April, 1910, and for a long time prior thereto, the said city of Muskogee negligently, and with the full knowledge of the existence thereof, permitted said hole so filled with mud and bricks and rocks to remain there in the open street without placing around or in the same any safeguard or railing to give notice of the said excavation and to protect persons who might be traveling upon said street from falling upon or into said hole, and thereby being injured, though there was grave and evident danger of said injuries. That some of said rocks were about 18 inches long and 12 inches wide, and the same had smooth surfaces and were so placed and allowed to remain in said mudhole that horses could not safely pass over the same in said street in the usual course of travel. That the plaintiff did not know, and could not have known by reasonable diligence, that said brick and rocks were in said mudhole, nor did he know, nor could he have known by ordinary diligence, that the said Market street at that point was unsafe for travel, but all of these facts were fully known to the defendant. That on or about the 25th day of April, 1910, the plaintiff was lawfully riding a horse, upon which he was seated, along and over said Market street, at and near said mudhole, and without being able to see the danger of the same, and without negligence, and in the use of due care upon the part of the plaintiff, and in the course of ordinary travel upon said street, the

horse upon which the plaintiff was riding stepped in said mud-hole and upon said stones and bricks which had been worn smooth, and dangerous to travel, and the said horse stepped upon said stones and bricks and fell in said mudhole and upon said rocks and bricks solely on account of said unsafe condition, and in falling the plaintiff's left leg was caught between the body of said horse and said stones, both bones thereof were crushed and broken at a point about three inches above his ankle, and his said leg was thereby greatly and permanently injured, and he was on that account for a long time sick, and has ever since been in great pain and in mental anguish," etc.

Defendant assigns as error: (1) Overruling the motion for a new trial; (2) admitting evidence on the part of plaintiff; (3) refusing to direct a verdict for defendant; (4) entering judgment for the plaintiff; and (5) refusing to give the following instruction to the jury:

"You are instructed that the matter of improving and maintaining given parts of a street set aside for public use pertains to the discretion of the legislative department of a city. There may be streets or parts of streets in a city which are not absolutely necessary for the convenience of the public, and which will be brought into use by the growth of the city; and there may be circumstances where it is not necessary to improve the width of streets for the requirement of travel. All that is required in such cases is that the city see that a sufficient part of the street required for use shall be in a reasonably safe condition for the convenience of travel. And if in this case you find that the street was safe and in good order in sufficient width to have been traveled by the plaintiff with ordinary care and prudence, no damage occasioned by the plaintiff's horse becoming frightened and getting outside of the usual traveled portion of the street to the spot where the accident took place can be recovered against the defendant."

The evidence disclosed that plaintiff, a policeman, was injured while riding a horse along Market street, a public street of the defendant city; that, in response to a call for an officer, he was proceeding upon a route that he considered the most direct

to the place to which he had been called; that, after he had entered Market street traveling at a gallop, he met a wagon covered with a sheet or tarpaulin, which he designated as an asphalt wagon, moving toward him upon a crooked or zigzag pathway through said street; that he was unacquainted with the condition of said street at the time he entered upon the same; but that there was a hole or space some 40 feet long and 30 feet wide in said street which had been partially filled with rocks of various sizes and dimensions that were protruding from the surface; that as he approached the same the horse upon which he was riding shied at the rocks and again shied at the fluttering cover upon the asphalt wagon, and jumped among and upon said rocks, which caused it to fall with and injure plaintiff. The undisputed evidence is that the horse upon which plaintiff was riding was a well-broken animal and ordinarily sure of foot.

Plaintiff's testimony is as follows:

"A. The place was between Altamont and Fourth street, and there has been a big mudhole, and some one had filled it up with rocks, and left only a zigzag path for a wagon to go through, and on the north side there was a place where a footman went through and as I went down there I turned off Fourth street on Market, and there was an asphalt wagon with a sheet over it to the left, and in the same track I was, and I was galloping along, and I saw that I couldn't go through there, and turned to go to the footman's path, and tried to check up my horse, and he was fractious, and as he jumped he struck the pile of rocks and fell, and, as I saw him fall, I got my feet out of the stirrups."

"A. I ran my horse around and tried to go through where the abutment was, and when the horse saw those rocks he turned and shied, and that is why he fell."

After plaintiff had testified that he had gone 30 or 40 feet upon Market street, he was asked and answered the following questions:

"Q. When you turned and got 30 or 40 feet away, you saw

Form 14

the condition of the street well?   A. Yes, sir; when I got on it. Q. And you undertook to go around that traveled path?   A. Yes, the extreme north side of the little path?   A. Yes, sir."

And again:

"Q. When you looked ahead and discovered this unsafe condition, you discovered the path to the right?   A. Yes, sir.   Q. You looked at that, and that looked safe?   A. Yes, sir; to me. Q. And you undertook to go around that traveled path?   A. Yes, sir.   Q. Was that in the street?   A. At the edge of the street."

The street commissioner of the city testified, upon cross-examination:

"Q. State to the jury what was the condition of that street? A. There had been a number of loads of rock dumped promiscuously into the street.   Q. How much of space would it leave for people to pass?   A. Just a very narrow driveway.   Q. Plenty of room for a person to ride along?   A. Yes sir; plenty of room to drive through single file.   Q. That street was used continuously? A. Every day or so.   Q. People passed around there without any trouble?   A. Yes, sir; every day I suppose.   Had a very narrow driveway to pass through."

The evidence disclosed that the street had remained in the condition above described for about a year prior to the injury.

It is urged by defendant that the defect in the street was not the proximate cause of the injury; and that the same would not have occurred had plaintiff not lost control of the horse upon which he was riding when it became frightened at the cover of the moving wagon upon such street. It is also the contention of defendant that it was not bound to keep the entire width of the street in repair.

The rule established in this state is that, when a city has opened or dedicated to the use of the public a street, it is incumbent upon it to keep the entire width of such street in a reasonably safe condition for ordinary travel. *City of Stillwater*

*v. Swisher,* 16 Okla. 585, 85 Pac. 1110. And the general rule, deduced from the various authorities, is that a city may in the exercise of its municipal powers provide that only a certain portion of a street shall be improved and used for public travel; but that, where it does so provide (if the entire street is apparently appropriated to the public use), then that certain portion must be in some manner specifically designated and defined so as not to mislead a member of the traveling public into the use of other dangerous portions to his injury. Where the entire thoroughfare is opened with nothing to indicate the purpose of the city to restrict the use thereof to a particular portion, it is the duty of the city to keep the whole in a reasonably safe condition for ordinary public travel; and a mere "zigzag" roadway through a space, covered by a number of loads of rock dumped promiscuously into the street, only wide enough to accomodate a single vehicle, does not meet the requirement of the law.

Opening a street or permitting it to remain open through its entire width is an invitation on the part of a municipal corporation to the public to use the same for customary travel; and an individual using such street in the ordinary way has a right to presume that he may go thereon free from any save the usual hazards of travel. If he is exercising ordinary and reasonable care for his own safety, he may assume that the municipality has done likewise; and if, as in the instant case, he is using such street in pursuit of his lawful occupation, riding upon a well-broken horse ordinarily sure of foot, at not an unusual speed, and such animal, without fault upon the part of his rider, becomes frightened and temporarily unmanageable, and, by reason of coming in contact with an obstruction or a defect in a street negligently created or permitted to remain therein by a city, falls and injures such rider, the municipality is liable therefor.

"It is clear that if a horse of ordinary gentleness merely shies or swerves to one side so that the driver does not in reality lose control over him, and injury is caused, without fault of the driver,

by his thus coming in contact with an obstacle or defect in the highway, the municipality will be liable."

Elliott on Roads and Streets (3d Ed.) sec. 793; *Spaulding v. Winslow,* 74 Me. 528; *Aldrich v. Gorham,* 77 Me. 287; *Hinckley v. Somerset,* 145 Mass. 326, 14 N. E. 166; *Meisner v. City of Dillon,* 29 Mont. 116, 74 Pac. 130; *City of Emporia v. White,* 74 Kan. 864, 86 Pac. 295; *Vogelgesang v. City of St. Louis,* 139 Mo. 127, 40 S. W. 653; *Dillon v. City of Raleigh,* 124 N. C. 184, 32 S. E. 548; *City of Lacon v. Page,* 48 Ill. 499; *Cunningham v. City of Thief River Falls,* 84 Minn. 21, 86 N. W. 763.

In *City of Hugo v. Nance,* 39 Okla. 640, 135 Pac. 346, it was said by this court in the syllabus:

"A municipal corporation is charged by law with the duty of at all times keeping its streets and sidewalks in a reasonably safe condition for travel by the public."

*Town of Fairfax v. Giraud,* 35 Okla. 659, 131 Pac. 159; *City of Kingfisher v. Altizer,* 13 Okla. 121, 74 Pac. 107.

It is also contended by the defendant that plaintiff's injury was one that could not have reasonably been anticipated by the city, and for that reason no recovery can be had.

In *Coolidge v. Hallauer,* 126 Wis. 244, 105 N. W. 568, it is said:

"It is not necessary, in order to constitute proximate cause, that the precise injury should have been foreseen or apprehended as certain to occur. It is sufficient if an ordinarily careful and prudent person ought, under the circumstances, to have foreseen that an injury might probably result from the negligent act."

See, also, *Hill v. Winsor,* 118 Mass. 251; *Armendaiz v. Stillman,* 67 Tex. 458, 3 S. W. 678; *Wilbert v. Sheboygan Light, Power & R. Co.,* 129 Wis. 1, 106 N. W. 1058, 116 Am. St. Rep. 931.

Again, it is insisted on behalf of defendant that there is a fatal variance between the acts of negligence alleged in the petition and the proof. In this contention there is no merit.

It was not error to refuse defendant's requested instruction set forth in the assignments of error.

The evidence was sufficient to take the case to the jury on the question of the negligence of the city and the issues involved.

We have examined the instructions given by the court, and, in our opinion, the jury were instructed as to the law applicable to the case in all particulars.

It follows that the judgment of the trial court should be affirmed, and it is so ordered.

All the Justices concur.