**TALLIAFERRO v. ATCHISON, T. & S. F. R. CO. et al.**

No. 5662—Opinion Filed Sept. 26, 1916.

(160 Pac. 69.)

**1. Municipal Corporations—Use of Streets—Liabilities for Injuries.**

The city of Perry maintained drainage ditches along the north and south sides of D street, immediately to the east of the Santa Fe railroad crossing in said city, which ditches were wholly within the street, with a roadway along said street between such ditches. There was a bridge over the ditch on the south side, which was in a dilapidated condition, which was, at the time of the injury complained of, being used as a means of crossing such ditch in going along a private road across the block to a certain cotton gin and two residences. The bridge in question was practically level with the surface of the street. The horse which plaintiff was driving, attached to a buggy, was frightened by the negligent acts of the employes of the defendant railway company in permitting steam to escape unnecessarily from an engine standing on the Santa Fe track just south of the crossing on D street, according to the testimony of the plaintiff, while he was driving along D street between the Frisco and Santa Fe tracks, and ran across the Santa Fe crossing toward the east, one wheel of the buggy striking the corner of the bridge across the south ditch, which caused plaintiff to drop the drive rein and become partially overbalanced. The running horse, at this point, turned into the roadway, and ran farther in an easterly direction, gradually crossing D street to the north side thereof. Just before running into the ditch on the north side of D street, the horse suddenly turned and started to the south side of D street. Neither the horse nor the buggy went into the ditch on the north side of D street at the point where the horse suddenly turned and the buggy was not upset, but plaintiff fell from the buggy into the ditch and was injured. The ditch at the point where plaintiff fell into it was about two feet deep. The plaintiff was fully aware of the condition of D street, and had driven along the same many times just prior to his injury, and the horse which he was driving on the occasion of his injury was beyond his control, and had been from the time it crossed the Santa Fe track. Held, that the city of Perry is not liable to plaintiff on account of the injuries sustained by him in such fall.

**2. Railroads — Operation — Accidents at Crossings—Care Required.**

A railway company, in the enjoyment of its right to operate its trains over its road, must exercise ordinary care not to injure a person who is in the act of crossing its tracks at a public crossing, and its liability for injuries, sustained by a person in a runaway which was caused by the horse taking fright from steam escaping from its engine, is based upon lack of ordinary care under the circumstances; and, where the conditions are such that noises from escaping steam would endanger a person at a public crossing, which result could be avoided by temporarily staying or suspending the noise without materially interfering with the due operation of the train, ordinary care and prudence would require that it be done.

**3. Appeal and Error—Trial—Witnesses—Accidents at Crossings—Admissibility of Evidence — Record — Cross-Examination of Witness.**

The court erred in sustaining the objections to the introduction of evidence offered by plaintiff in rebuttal, in refusing to permit plaintiff to complete his record by making a tender of the excluded testimony.

**4. Railroads—Accidents at Crossings—Instructions.**

Instructions examined and held to be erroneous.

(Syllabus by Campbell, C.)

Error from District Court, Noble County; W. M. Bowles, Judge.

Action by C. T. Talliaferro against the Atchison, Topeka & Santa Fe Railway Company and another. Judgment for defendants, and plaintiff brings error. Affirmed as to defendant City of Perry and reversed as to defendant railway company, with directions to grant a new trial.

P. W. Cress and Henry S. Johnston, for plaintiff in error.

Cottingham & Hayes, and H. E. St. Clair, for defendants in error.

Opinion by CAMPBELL, C. This action was commenced in the district court of Noble county by C. T. Talliaferro, as plaintiff, against the Atchison, Topeka & Santa Fe Railway Company and the city of Perry, as defendants, to recover damages for personal injuries sustained by him on account of the alleged negligence of the defendants. The cause of action was stated in two counts. The trial resulted in a verdict for the defendants, and judgment was rendered on the verdict for the defendants. The plaintiff appeals, and alleges many errors, on account of which he seeks a reversal of the judgment. We shall consider the record first, as it relates to the city of Perry, and, second, as it relates to the Atchison, Topeka & Santa Fe Railway Company.

According to the evidence of the plaintiff, he was driving along D street in the city of Perry in a buggy on the 27th day of January, 1910, in the afternoon, between the Frisco and Santa Fe railway crossings, going in an easterly direction, to make delivery of some goods to a house in that direction, and just as he got into the basin be-

tween the Frisco and Santa Fe tracks he heard the noise of escaping steam from an engine on the Santa Fe track just south of him, and the shrieking noise from such engine frightened the horse he was driving, and the horse plunged forward and ran up the incline to the Santa Fe track where it crossed D street. He had his horse under control by the time he reached the track and then the steam became more violent and the noise became more shrieking, and as he drove down the decline from the track the noise continued. He saw some person in the engine cab when the steam first frightened his horse, and the person was looking at him and laughing, and when the noise became more shrieking and the steam more violent, just as he was driving down the decline from the track, he saw this same person in the same condition as before in the cab of the engine. He was trying to control his horse, but she plunged over the tracks and down the decline. The engine was standing still, and steam was coming from the top and bottom of the engine. He was holding onto the lines and trying to control her, and when she ran down the decline from the track she was going as fast as she could, and just as he attempted to cross the bridge across the drainage ditch on the south side of the street, his buggy wheel struck the bridge at an angle of about 30 degrees, struck the north abutment more to the east end of the abutment on the north, and as he struck the bridge the horse was going at full speed, and one line was knocked out of his hand, and he was bounced up in the buggy and lost control of the drive rein. The horse then turned back into the roadway in the street and ran in an easterly direction, gradually crossing the street to the north side, and when the horse came near to the drainage ditch on the north side of the street it suddenly turned toward the south side. Neither the horse nor the buggy went into the ditch, and the buggy was not upset, but plaintiff was thrown from the buggy into the ditch on the north side, and broke his leg and bruised himself, and the horse ran to the south side of the street and plunged into the ditch, dragging with her the buggy. There were two drainage ditches, one on the north side and one on the south side of D street just east of the Santa Fe crossing, and between these two ditches there was the roadway, both ditches being within the street. There was a bridge immediately to the east of the crossing, which was used as a means of crossing the south drainage ditch in going along a private road over the block to the cotton gin and two residences, and the planks on the bridge were loose and the bridge was in a

bad condition, but the north end of the bridge was level with the ground. He had crossed this bridge and knew about its condition, and knew about the ditches on both sides of the street, and had frequently traveled along this street. The horse was beyond his control after crossing the Santa Fe tracks. The ditch into which he was thrown was about two feet deep. This, in substance, was the testimony of the plaintiff bearing upon the cause of his injury.

It appears from this testimony that the horse which plaintiff was driving became frightened and ran away on account of the negligence of the employes of the defendant railway company, and when the horse ran down the decline immediately east of the Santa Fe tracks, it was running away, and was beyond the control of the driver. The unsafe condition of the bridge across the south ditch may be conceded, but such condition of the bridge in no way contributed to the injury which plaintiff received, unless that portion of the bridge which the buggy struck was in some manner responsible for the injury. As pointed out, the testimony showed that the portion of the bridge which the buggy struck was the north end, and it was level with the ground. No complaint is made as to the end of the bridge being improperly constructed or placed, and nothing gave way when the buggy struck it. Nothing except the usual result attended the striking, namely, the buggy bounded, and the plaintiff was bounced up in the buggy. No negligence, chargeable to the city of Perry, operated to bound the buggy or bounce the plaintiff, and the fact that he lost control of his drive rein was a mere incident so far as the city was concerned in its legal relation to the plaintiff. The bridge might have been in perfectly safe condition and still the same result would have attended the contact of the buggy with the corner of the bridge. There is therefore no casual relation between the unsafe condition of the bridge and the injury sustained by plaintiff.

There were two drainage ditches in the street, one along the north side and the other along the south side. This street was one along which there was very little travel, and plaintiff knew of the condition of this street. It seems that it was used only by persons who had occasion to visit a very thinly inhabited portion of the city. The street in question was of the usual width and the ditch where the bridge crossed it on the south side was probably not over four feet wide and three feet deep, and the ditch on the north side of the street was probably a little wider at places, but at no place be-

tween the Santa Fe crossing and the place where the injury occurred was the ditch more than three feet deep. The street had been in the same condition for a long time prior to the date of the accident, which occurred about 1 o'clock in the afternoon. There was no culpable defect in the street at the time of the injury under the evidence offered by plaintiff. Taking into consideration the infrequency of travel along this street and the abandoned condition of the roadway along the same, it cannot be said with reason, that the city was guilty of negligence in maintaining it in the condition in which it was at the time of the injury to plaintiff. Under the evidence of the plaintiff, the city had used proper care and diligence to keep the street in question in a reasonablly safe and convenient condition for travel in the usual and ordinary manner, and there was no obligation resting upon the city to furnish plaintiff such a highway upon which it would be safe for his horse to run away. There is no evidence to show that these ditches were not necessary in order to furnish an outlet for the surface water, and we cannot assume that they were unnecessary for that purpose. If they were, the only way in which the city could provide against injury to the traveling public would be to construct barriers along the ditches in question, and even if the conditions were such as to have made it the duty to have taken that precaution, it does not appear from the evidence that the injury would not have occurred.

The rule in relation to the liability of a municipality for failure to keep its streets in proper and safe condition is discussed in Dillon on Municipal Corporations, vol. 4, sec. 1706, as follows:

"The liability is not that of a guarantor of the safety of the traveler. The corporate authorities are only bound to use reasonable skill and diligence in making the streets and sidewalks safe and convenient for travel. They are under no obligation to provide for everything that many happen upon them, but only for such things as ordinarily exist. or as such may reasonably be expected to occur. They are not bound to keep the streets in such condition that a traveler thereon may, with safety, run his horses at a furious rate of speed or drive thereon unmanageable horses. nor are they bound to keep them in such condition that damage may not be caused thereon by horses which have escaped from the control of their driver and are running away."

A learned discussion of the subject is found in the decision of the court in Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574, where it is said:

"A municipal corporation, bound to keep its streets in repair, does not become an insurer of travelers thereon. It is bound to use reasonable skill and diligence in making its streets safe and convenient for travel. It is under no obligation to provide for everything that may happen upon its streets, but only for such use of them as is ordinary or as may reasonably be expected. .It is not bound to keep its streets in such condition that a traveler thereon may, with safety, run his horses at a furious rate of speed or drive thereon safely unmanageable horses, neither is it bound to keep its streets in such condition · that damage may ·not be caused thereon by horses which have escaped from the control of their driver and are running away."

After discussing the conflicting decisions upon this question. the court announces the rule, which finds support in the weight of authority as well as in reason, as follows:

"When two causes combine to produce an injury to a traveler upon a highway, both of which are, in their nature, proximate— the one being a culpable defect in the highway and the other, some occurrence for which neither party is responsible—the municipality is liable, provided the injury would not have been sustained but for such defect. This appears to us to be the reasonable rule. It exacts no duty from municipalities which has not always rested upon them. They must use proper care and viligence to keep their streets and highways in a reasonably safe and convenient condition for travel. This is an absolute duty which they owe to all travelers; and when the duty is not discharged, and, in consequence thereof, a traveler is injured, without any fault on his part, they incur liability. They are not bound to furnish roads upon which it will be safe for horses to run away, but they are bound to furnish reasonably safe roads; and if they do not, and a traveler is injured by culpable defects in the road, it is no defense that his horse was at the time running away, or was beyond his control."

In the case of Moss v. City of Burlington, 60 Iowa, 438, 15 N. W. 267, 46 Am. Rep. 82, it was held:

"Where plaintiff securely tied his horse to a post on a city street, the continuity of which was broken by a precipitous and impassable ravine. along which the city had erected no barriers, and plaintiff's horse, becoming frightened, broke loose and ran along the street and plunged down the precipice and was killed, held that the city was not liable to plaintiff for the damages by him sustained."

In Teater v. City of Seattle, 10 Wash. 327, 38 Pac. 1006, the court said:

"The fact that a runaway team 'of horses while under full headway dashes over the side of a bridge at a point where the city has provided no guard rail does not render the city liable for the injury, if the bridge

was in a reasonably safe condition and the fright of the horses had not been caused by any negligence chargeable to the city. A city is not the insurer of the safety of its streets, but is only required to keep them in a safe condition for ordinary travel."

In the case of Street Railway Co. v. Stone, 54 Kan. 83, 37 Pac. 1012, the court held:

"The rule is that where two causes combine to produce the injury, both in their nature proximate, the one being the defect or obstruction in the public street and the other some occurrence for which neither party is responsible, the city is liable, provided the injury would not have been sustained but for the defect in the street."

In 13 R. C. L. sec. 374, it is said:

"According to the weight of authority, where two causes combine to produce the injury, both of which are in their nature proximate, the one being a defect in the highway, for which the city is liable, and the other, the running away of a horse, for which neither party is responsible, then the municipality is liable, provided the injury would not have been sustained but for the defect in the highway and the plaintiff was not guilty of contributory negligence."

To the same effect is the case of City of Muskogee v. Miller, 45 Okla. 414, 145 Pac. 782, in which case this question was incidentally discussed, although the injury in that case was not sustained in a runaway.

From the foregoing authorities, it will be observed that before a city may be held lible for injuries sustained in a runaway, where the fright of the horse was not caused by any negligence chargeable to the city, but by an independent act of some third person, the negligence of the city (conceding such negligence) must have been, in its nature, proximate. In the instant case, under the testimony of the plaintiff, there was an efficient, primary, and proximate cause of the injuries sustained by him, independent of any alleged negligent condition of the street in question, and, conceding negligence on the part of the city, its liability under the condition of the record would necessarily be based upon the theory of concurring negligence, which must be proximate in its nature, without which the injury would not have been sustained. Conceding the condition of the street to be just as the testimony of the plaintiff showed, and further conceding negligence on the part of the city of Perry in permitting it to so remain, it would still seem from the decisions upon the question that such negligence of the city would not be deemed sufficient in law as a proximate cause of the injury sustained by the plaintiff under the facts as disclosed by the record in this case.

In the very recent case of Thuborn v. Dravo Contracting Co., 238 Pa. 443, 86 Atl. 292, 44 L. R. A. (N.S.) 699, Ann. Cas. 1914C, 252, the court, in discussing this question said:

"The sole question in the case is, What was the proximate cause of the accident? The defendant's negligence in failing to erect barriers on the embankment may be conceded, but liability for plaintiff's loss does not result therefrom, except as such negligence was the proximate cause. Mere concurrence of one's negligence with the proximate and efficient cause of the disaster will not create liability. But for the escape of the horses from the control of the party in charge the accident would not have happened. For that escape defendants, of course, were not liable."

In the above case, the court announced the following rule:

"When there are two efficient, independent * * * causes of an injury sustained on a highway, the primary cause being one for which the party charged with negligence is not responsible, * * * and the other being a defect in the highway, the injury must be referred to the former and not to the latter."

The case of Schaeffer v. Jackson Twp., 150 Pa. 145, 24 Atl. 629, 18 L. R. A. 100, 30 Am. St. Rep.792, is very similar in principle to the case at bar. In that case a horse, hitched to a vehicle, took fright at a donkey drawing a cart loaded with tin cans, and ran away, wrecking one of the wheels, which dragged upon the ground until it reached a hole, negligently left in the highway, when the occupants were thrown out and injured. It was held, reversing the judgment of the lower court, that the proximate cause of the injury was the fright of the horse, which was not caused by any neglect of the township. In the opinion of the court it is said:

"The injury must have been the natural and probable result of the defendant's negligence. But the cases must be rare in which an injury can be said to be the result of the negligence of a party when there is another and primary efficient proximate cause, wholly independent of such negligence and for which the party charged with negligence is in no way responsible. In such cases it would be incumbent on the plaintiff to show that the accident would have happened without the concurrence of the primary efficient proximate cause."

See Merrill v. City of Portland, Fed. Cas. No. 9,470; Alexander v. Town of New Castle, 115 Ind. 51, 17 N. E. 200; De Camp v. Sioux City, 74 Iowa, 392, 37 N. W. 971; Shepherd v. Inhabitants of Chelsea, 4 Allen (86 Mass.) 113; Childrey v. City of Huntington, 34 W. Va. 457, 12 S. E. 536, 11 L. R. A. 313; C., R. I. & P. Ry. Co. v. Nagle, 55 Okla. 235, 154 Pac. 667.

There seems to be a well-defined exception to the above rule in those cases where the horse is not running away, but is momentarily beyond the control of the driver at the time the injury occurs; and there are several cases in which a different rule appears to have been adhered to, but upon a careful analysis of such cases, such different rule is due to the facts that distinguish that class of cases from the one under consideration. Such apparent conflict exists in the decisions of the courts of Pennsylvania, but all doubt as to the correct rule was removed by the court in the case of Thubron v. Dravo Contracting Co., supra, wherein it was said:

"Whenever in any of our cases a municipality has been held liable for damages, resulting through a frightened horse, it has appeared as a fact that the horse took fright at a point on the highway where it was in unsafe condition, and the disaster followed as an immediate consequence."

Entertaining the views we do, so far as the plaintiff's right of recovery against the city of Perry is concerned, it is unnecessary to further consider the alleged errors of the trial court, for the evidence of the plaintiff absolved the city from liability for his injuries, and the court should not have submitted the case to the jury as against the city of Perry, and any errors that may have been committed were without prejudice to the rights of the plaintiff as against the city, as he had none.

We come now to a consideration of the record as it relates to the defendant railway company. Upon the fact of the negligence of the railway company, there is a sharp conflict in the evidence. If the evidence submitted by the plaintiff is believed, there is liability upon the company; and, on the other hand, if the evidence submitted by the company is believed, there exists no liability. Therefore the case as to the defendant company was properly submitted to the jury. There was a clear case of willful and wanton negligence made out against the defendant company, if the evidence of the plaintiff is to be believed.

There are many cases which deal with the liability of a railway company on account of injuries sustained in a runaway, when the negligence of the company was the primary and proximate cause of such injuries. The evidence of the plaintiff is so strong upon the question of the negligence of the company in the instant case that no doubt can exist as to liability on account thereof, if such evidence is to be believed, but we shall refer to a few of the leading cases upon that question. Under the plaintiff's evidence, not only were the usual and customary noises made by the engine after the perilous position of the plaintiff was observed by the employe of the defendant who was in control of the engine in question, when it was possible to have stayed or suspended such noise without materially interfering with the proper operation of the train, and thereby to have avoided the danger to the plaintiff, but unusual and unnecessary noises were made under conditions which showed a reckless disregard for human life.

The case of L. & N. Ry. Co. v. Penrod, Adm'r (Ky.) 66 S. W. 1013, deals with a condition very similar to the one under consideration, and there it was held:

"It is negligence to make the customary noises incident to the movement of a train where the servants in charge have reason to apprehend injury therefrom to the driver of a team, near the track, whose perilous position they have discovered, unless it is reasonably necessary to do so for the protection of the property and lives in their charge."

Another case very similar to this one is Williams v. Chicago, B. & Q. Ry. Co., 78 Neb. 695, 111 N. W. 596, 14 L. R. A. (N.S.) 1224, wherein it was held:

"Ordinarily a railroad company is not liable for injuries caused by a team taking fright at the noises incident to the ordinary operation of a train on its road. But where the conditions are such that noises thus made would endanger a person at a public crossing, which result could be avoided by temporarily staying or suspending the noise without materially interfering with the due operation of the train, ordinary care and prudence require that it be thus stayed or suspended until the danger is past."

In Culp v. Atchison & Nebraska R. Co., 17 Kan. 475, it was held:

The blowing of a steam whistle, and the letting off of steam, are not per se acts of negligence, or evidence of wrongful conduct on the part of those in charge of a railroad train. But when those acts are done carelessly, heedlessly, and without any necessity therefor, they may become acts of negligence, and the railroad company be responsible for injuries caused thereby."

It was said by Mr. Justice Brewer, in the above case:

"While the defendant might, under some circumstances, lawfully, and without subjecting itself to responsibility for injuries sulting therefrom, cause the whistle to be blown, or the valves to be opened and steam permitted to escape, yet the same acts, done without any necessity therefor, done negligently and heedlessly, might render the defendant responsible for all injuries caused thereby.".

See Fares v. Rio Grande Ry. Co., 28 Utah, 132, 77 Pac. 230, 3 Ann. Cas. 1065; Cox v.

Ill. Cent. R. Co., 142 Ky. 478, 134 S. W. 911 32 L. R. A. (N.S.) 831.

In the recent case of Chicago, R. I. & P. R. Co. v. Hine, 59 Okla. 143, 158 Pac. 597 this court said:

"The situation here, in so far as it relates only to the duty of the railway in regard to making unnecessary noises, is not materially different from that where persons or stock are upon highways or public places contiguous or parallel to the company's right of way. In such situations as in the case at bar, the railway company is operating its train, and the plaintiff has his property, each where they had a right to be; neither is trespassing upon the other's property; each owes the other the duty to use ordinary care not to cause an injury to the other. Whether or not the unnecessary blowing off of the steam would be a lack of ordinary care must, we think, in almost every case, depend upon the particular facts, and whether or not there was a lack of ordinary care must be a question for the jury."

There is no fixed standard of duty in relation to this matter, and a railway company in the enjoyment of its right to operate its train over its road must exercise ordinary care not to injure persons who are crossing its tracks at a public crossing, and its liability for injuries sustained by a person in a runaway, caused by a horse taking fright from steam escaping from its engine upon its track, is based upon the lack of ordinary care under the circumstances; and, where the circumstances are such that noises from escaping steam would endanger a person at a public crossing, which result could be avoided by temporarily staying or suspending such noise without materially interfering with the due operation of the train, ordinary care and prudence would require that it be done.

Under the rule, whether or not the defendant exercised ordinary care under the facts in this case is a question of fact for the jury, under proper instructions from the court, and the court submitted that fact to the jury, and a general verdict was returned in favor of the defendant.

But it is urged that the plaintiff was not permitted to introduce certain material evidence to the jury, and thereby was prevented from fairly trying this question. The plaintiff testified that the steam was escaping from both the top and bottom of the engine standing on the defendant's track just south of the crossing, and that his horse was frightened by the noises from such escaping steam. This was very material testimony, in the light of his further testimony to the effect that the man in charge of the engine was looking at him and was observing his perilous position. The defendant submitted the testimony of its engineer to the effect that steam could not escape from below when the engine was standing still, on account of the mechanical construction of the engine. This evidence contradicted the evidence of the plaintiff, and tended to impeach him and destroy his credibility. In rebuttal, the plaintiff offered a witness in his behalf, and asked several questions, the nature of which indicated that the witness might give testimony that would refute the evidence of the defendant's witness with reference to the construction of the engine. If such testimony was available, it was very material as rebuttal testimony. The trial court sustained objections made by the defendant railway company to the questions so asked the witness on the ground that it was not proper rebuttal testimony. The testimony sought to be elicited from the witness by the questions asked was very material to the plaintiff's cause, and it was proper as rebuttal testimony, if the testimony of the witness had been to the effect indicated by the nature of the questions. In this ruling the trial court was wrong. Thereupon plaintiff endeavored to make a formal tender or offer of the evidence which the witness would furnish if permitted to give his testimony, and to have the same appear in the record so that the court could determine that it was material to the plaintiff's cause, as evidence offered by the plaintiff and excluded from the consideration of the jury by the court, and objection was made to that being done, and the court sustained the objection and refused to permit the plaintiff to have incorporated into the record the evidence which the witness would furnish so that its materiality might be made to appear. In this ruling the trial court was also wrong. In order that rule 25 of this court (38 Okla. x, 137 Pac. xi) may be complied with, it is necessary that the testimony excluded be made to appear in the record in substance, and the only way it can be made to so appear is by making a formal offer of it and have the same appear in the record of the proceedings of the court, and in that way its materiality may be ascertained and the rule of this court complied with. Vinita Hardware Co. v. Porter, 45 Okla. 470, 146 Pac. 14. The error of the trial court as pointed out was prejudicial. There was a sharp conflict as to those facts that bear directly upon the question of negligence. Under the evidence that was permitted to go to the jury, they had a right to say that the plaintiff was contradicted in his evidence by the mechanical construction of the engine, and for that reason his testimony was not worthy of belief. Judging from the verdict returned, the jury must have disbelieved the testimony of

the plaintiff, which they might not have done if there had been evidence showing the construction of the engine to be such as to permit steam to escape from below, thereby corroborating the evidence of the plaintiff and making his evidence appear reasonable and fair.

We have examined the record as to the cross-examination of the plaintiff carefully, and we think the cross-examination by the defendant as to the character of the horse which he was driving was proper, and that the disposition of the horse which plaintiff was driving on the occasion of the runaway was a proper subject-matter for cross-examination, and the error urged by plaintiff on that account is without merit.

It is urged that instruction No. 15, given by the court, is erroneous. This instruction is as follows:

"If you believe from the evidence that at the place where the plaintiff met with the injury complained of the street was at the time in a reasonably safe condition, your verdict should be for the defendant. If the jury believe from the evidence that the place where the accident in question occurred was necessarily more dangerout than the ordinary street, and that by the exercise of ordinary care and prudence this condition could have been known to the plaintiff, and was known to him, then the plaintiff was required to use more than ordinary care and caution to avoid the accident, and, if he failed to do so, and thereby contributed to the injury, he cannot recover in this suit.

It is not clear from the instructions as a whole whether this particular instruction was intended as applicable to the cause of action so far as it affected the city of Perry, or whether it was given to the jury as applicable alike to the cause against both defendants.

The trial court seems to have, in a measure, given spearate instructions, and separately dealt with the liability of the two defendants, and if this instruction was intended as applicable only to the case as against the city, it would be harmless, even though it is an erroneous statement of the law as to the degree of care required of the plaintiff, for the reason that the case was improperly submitted to the jury as against the city. But the instruction could have been considered by the jury as applicable alike to the case against the railway company, and, if it were, it was misleading, in that it required a higher degree of care and caution than should have been required of the plaintiff. All that was required of the plaintiff was ordinary care on his part. The term "ordinary care" denotes such a degree of care as is commensurate with the dangers

to be encountered and the degree is determined by the jury in fixing the standard of conduct reasonably to be expected from ordinary, prudent persons under similar circumstances. The instruction in this respect was erroneous. Instructions Nos. 3 and 4 are also claimed to be erroneous statements of law. Since these instructions were given solely because the city was a party defendant, and there will exist no condition in the case which will render them applicable in another trial of this case, we do not deem it advisable to discuss them.

We believe the substantial rights of the plaintiff have been prejudiced on account of the errors pointed out in this opinion so far as his cause of action against the defendant railway company is concerned, and for that reason the judgment of the trial court in favor of the Atchison, Topeka & Santa Fe Railway Company is reversed, and this cause remanded, with directions to grant a new trial. The judgment in favor of the city of Perry is affirmed.

By the Court: It is so ordered.