## DICKINSON, Receiver, et al. v. WHITAKER.

No. 9345—Opinion Filed July 29, 1919.

Rehearing Denied September 9, 1919.

(Syllabus by the Court.)

### 1. Master and Servant—Contributory Negligence—Assumption of Risk—Jury Question.

Under section 6, art. 26, Constitution of Oklahoma, the defense of contributory negligence, or assumption of risk, shall in all cases whatsoever be a question of fact, and shall at all times be left to the jury.

### 2. Negligence—When Jury Question.

In cases involving the question of primary negligence, the rule is now settled that when a given state of facts is such that reasonable men fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered one of law for the court.

### 3. Master and Servant—Safety of Appliances —Duty of Servant.

The master is bound to exercise reasonable care and diligence to provide reasonably safe machinery, tools and appliances with which to perform the work required of him, and a servant has the right to assume, in the absense of knowledge to the contrary, that the master has discharged this duty, and hence is under no obligation to inspect the machinery for latent defects.

### 4. Damages—Personal Injury—Discretion of Jury—Appeal.

It would be impossible to recount all the factors which enter into the common and general notions of what is fair and just as a basis to measure the damages for personal injuries. There can be no absolute standard to measure such damages, and a wide latitude of discretion is necessarily left to the good sense and discretion of the jury which fixes the award. And, in an action for personal injury, a verdict will not be set aside for excessive damages unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence or prejudice, or has totally mistaken the rules of law by which damages are regulated.

### 5. Trial — Argument—Shorthand Record — Necessity.

Section 1786, Rev. Laws 1910, making it the duty of the court reporter to take down in shorthand all the proceedings upon the trial of any cause, as well as all statements of counsel, the witnesses, or the court, made during the trial of any cause, or with reference to any cause pending for trial, when required by a party or attorney interested therein, does not contemplate that the entire argument of counsel to the jury shall be taken

down, but applies to all statements which counsel have a right to have taken down concerning the cause, which might properly be made a part of the case-made for appeal or proceedings in error.

**6. Appeal and Error—Harmless Error.**

The court in every stage of action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect.

Error from District Court, Beckham County; T. P. Clay, Judge.

Action by W. E. Whitaker against Jacob M. Dickinson, as receiver of the Chicago, Rock Island & Pacific Railway Company, and against the railway company itself. Judgment for plaintiff, and defendants bring error. Affirmed.

R. J. Roberts, C. O. Blake, W. H. Moore, J. E. Dumars, and Hendrix & Tracy, for plaintiffs in error.

Ledbetter, Stuart & Bell, for defendant in error.

PITCHFORD, J. The defendant in error herein, plaintiff below, brought this action in the district court of Beckham county, June 24, 1916, against the plaintiffs in error herein, defendants below. The parties will be designated "plaintiff" and "defendant" as in the trial court. The plaintiff alleged that on or about the 3rd day of May, 1915, he was in the employ of the defendant in a machine shop at Chickasha, Okla.; that, by virtue of his employment it became his duty, under the direction of the foreman of the defendant, to lift, or have lifted, a belt cone or pulley, weighing 920 pounds, from the wheel lathe where it was resting for the purpose of taking measurements of some gearing connected therewith, in order to check up a blueprint; that while lowering said pulley or cone to its place after it had been lifted with a chain block and pulley, and while the cone or pulley was being lowered back to its place on the wheel lathe, the chain supporting the cone or pulley broke and caused the cone to fall on the plaintiff's right hand, resulting in serious and permanent injuries to his right hand; that in order to lift the cone so that the measurements could be taken, a chain was furnished plaintiff by the defendant for that purpose; that the chain so furnished was defective and weak and not of sufficient strength to support and handle the cone; and that the weak and defective condition of the chain was known to the defendant, or should have been known by the use of ordinary care on its part. The plaintiff fur-

ther alleges that the defendant was negligent in furnishing an incompetent and negligent negro to handle the pulley and chain and to lower the cone; that by reason of the cone falling on the hand of the plaintiff, the second and third fingers of his right hand were broken and mashed and crushed in several places; the fingers were rendered stiff and drawn so that they cannot be stretched out and used as formerly; the tendons on the second finger were severed; and that this finger will not open nor fold up; the knuckle on the second finger was pressed down and caused to push through the palm of the right hand, which hand is so crushed and mashed that it never will permit this plaintiff to do mechanical work with his right hand or fingers as formerly; that the said hand and fingers are permanently injured and scarred and deformed; that the circulation in the fingers and hand is bad; and that the plaintiff has suffered great pain and discomfort on account of the injuries so received, and will continue to suffer for the rest of his life; that at the time of the injuries the plaintiff was 34 years of age, in good health, was a skilled mechanic and machinist, and was able to earn as much as $148 per month; that on account of the said injuries, he was permanently disabled from work for twelve months, will never be able to do the work that he did before the injuries, and will never be able to earn as much wages by 50 per cent. as he was earning before the injuries. On account of the injuries, plaintiff alleges that he was damaged in the sum of $20,000.

In its answer, the defendant alleged that at the time of the accident complained of, the defendant was an interstate common carrier, and the plaintiff was engaged in the repair of instrumentalities used in interstate commerce, by reason of which fact the rights of the parties hereto are determined and fixed by the Federal Employers' Liability Act; that at the time the plaintiff entered the employment of the defendant, he was an experienced man, skilled in the line of his work and knew and appreciated all of the risks attendant upon the work of a machinist, in which employment he was engaged at the time of the alleged accident; that plaintiff voluntarily entered the services of this defendant as a machinist, and the risk and hazard of the said service at the time of the accident were not other or different from those at the time the plaintiff voluntarily entered the employment of the defendant; that he knew and appreciated all of the natural and ordinary risks incident to the service in which he was employed, and in which he was connected at the time of the accident; that the injuries complained of were directly due to

and proximately caused by the natural risks and hazards incident to the service in which the plaintiff was employed, and in which he was at the time of the accident engaged, and were assumed by him at the time of his entrance upon the employment. The defendant further alleges that the plaintiff's injuries were directly due to and caused by his own contributory negligence in his failure to select a sufficiently strong and perfect chain to raise and lower the cone which he was measuring at the time of the accident; and in failing to properly inspect and examine the chain which he selected for use, and in failing to ascertain whether or not the chain was, in fact, weak and defective, as alleged, while he was making said examination and inspection of the same prior to its use in raising and lowering the cone.

The cause being submitted, the jury returned a verdict in favor of the plaintiff for $15,000, which was afterwards reduced by the court and a judgment entered thereon for the sum of $10,000, from which judgment the defendant appeals and discusses the following specifications of error: 1. That defendant's motion for an instructed verdict should have been sustained. 2. That there was no duty on the part of the defendant to inspect the chain which the plaintiff used. 3. That the jury failed to follow the law of the case as given in Instruction No. 8. 4. That the jury was misled by Instructions Nos. 6 and 9 given by the court. 5. That the damages assessed were excessive. 6. That it was error for the court to refuse to require the court reporter to take down the argument of counsel for plaintiff upon the request of defendant.

There is an allegation in the answer that the defendant was an interstate carrier, and that the plaintiff at the time of the injury complained of was engaged in the repair of instruments used in interstate commerce, and therefore, the rights of the parties are to be determined and fixed by the Federal Employers' Liability Act. This cause, however, appears to have been tried in the lower court as one arising purely under state law. It is not necessary that the pleadings refer especially to the federal act, supra, provided they show an action under said act. Under the pleadings and the evidence, we are of the opinion that the cause was properly tried under the state law.

The errors alleged in first, second, third and fourth assignments may be considered together. At the conclusion of plaintiff's evidence, the defendant requested the court to give the jury the following peremptory instruction:

"Comes now the defendant, at the close of all testimony, and moves the court to instruct the jury to return a verdict in its favor for the reason that the proof, together with all reasonable inferences to be drawn therefrom, fails to establish a cause of action in favor of the plaintiff and against the defendant."

The court overruled this motion, and upon the conclusion of all evidence, defendant requested the following instruction:

"You are instructed that if you find under the evidence in this case that the plaintiff procured said chain which he was using at the time of the accident from the place where he kept it, and after making said selection, used the same, without any specific order or command to do so by any superior officer or foreman, you are instructed that he assumed the risks of any defects which said chain had at that time, and cannot recover in this action for any injuries caused thereby."

The court refused this instruction and gave Instructions Nos. 8 and 9, as follows:

No. 8. "You are instructed that when the plaintiff selected the chain which he was using at the time of the accident, he was charged in law with the assumption of the risk of the injury by reason of all defects therein that were open and obvious to a man of ordinary prudence in a like situation; therefore, if you find that said injuries received by him, if any, were directly caused by risks from said obvious defects of said chain, if any, you are instructed the plaintiff is not entitled to recover any damages because of injuries caused thereby."

No. 9. "Now, bearing in mind the above and foregoing definitions and instructions, if you find from the evidence that plaintiff's injuries were brought about by reason of his own negligence, or that his negligence in any degree contributed to the injury complained of, you must find for the defendant and your verdict must be for the defendant. And, if you find that plaintiff's injuries were brought about by reason of any risk which he assumed as the ordinary risk incident to his employment, your verdict must likewise be for the defendant."

The defendant strenuously contends that taking Instructions Nos. 8 and 9 in connection with defendant's Instruction No. 1, and the peremptory instruction requested by the defendant, the court committed error in not directing the jury to return a verdict in favor of the defendant.

The evidence shows that the plaintiff was in the employ of the defendant in the capacity of machinist. His duty was to repair machinery, locomotives and car machinery, and make new parts for them. On the day of the injury, he was measuring or checking up a blueprint, and it became necessary to lift the cone. The machinery employed for

this purpose consisted of a chain and block fastened to a beam above. By pulling on one chain, the pulleys are moved, usually one man being able to lift several tons. On this occasion, the plaintiff was provided with an assistant by the foreman. In order to lift the cone out of the machine, it was necessary to put a chain around it. There was no chain especially provided for that purpose. The chain used by the plaintiff was one taken off a chain and block which had been used for lifting purposes. Plaintiff had the chain in his locker, it being 20 or 25 feet long, composed of links of 1 1-4 inches. After the chain was adjusted, the helper raised the cone, after which the plaintiff proceeded to do the measuring required. The chain used on this occasion had been tested in Chicago, and was marked as capable of lifting 2,000 pounds. It had never been tested at Chickasha, and 'the defendant had no way of testing chains at the Chickasha shops. The chain used had been in the possession of the plaintiff for some time, being kept in his locker on the wall. Others used it, but the plaintiff took care of it himself in order not to waste time looking for it. He had particular charge of the chain and claimed it as his own. After the cone had been raised, the same remained suspended for about one hour while the measurements were being taken. The general foreman was then sent for, who came and looked at work done by the plaintiff. The foreman had every opportunity of seeing the chain. After completing the measurements, the helper was ordered to lower the cone. As he took hold of the chain, he gave it a whirl. Plaintiff steadied the cone with one hand on the pulley; there appeared to be some jerking. Plaintiff looked up to see what the helper was doing, and as he did so, the chain broke and the cone fell on his right hand. 'The helper at the time was not looking at his work; he was talking to, or yelling at, somebody standing in the shop. As the cone came down it came with jerks.

The theory of the defendant is that the evidence is uncontradicted as to the contributory negligence of the plaintiff and the assumption of risk on his part, and that where this is true, it then becomes a question of law and not of fact. Section 6, art. 26, Constitution of Oklahoma, is as follows:

"The defense of contributory negligence or of assumption of risk shall in all cases whatsoever be a question of fact, and shall at all times be left to the jury."

There seems to be no ambiguity in this section of the Constitution, and certainly the defendant could not say that the instructions given by the court were not favorable to the

defendant. The jury was instructed specifically that if they believed plaintiff's injuries were brought about by reason of his own negligence, or that the plaintiff's injuries were brought about by reason of any risk which he assumed as an ordinary risk incident to his employment, their verdict should be for the defendant. Defendant was not entitled to Instruction No. 1, refused by the court.

We find the plaintiff was instructed to do certain work. In doing this work, it was necessary for him to use a chain. The chain delivered to him by the defendant was supposed to have been tested in Chicago, and plaintiff and others who had occasion to use the chain had every reason for believing that the same had been properly tested, and that it was capable of lifting 2,000 pounds. The defendant contends that the plaintiff assumed the risk of any defects which the chain had at the time. We are unable to see upon what theory. How was the plaintiff to make the test? Would he have been required to take the chain, which was 20 or 25 feet in length, composed of links 1 1-4 inches, and examine each link carefully before attempting to use it? Even if he had made this minute inspection, there is nothing in the evidence to show that any defect could have been discovered. All that we can know as to a method for testing the strength of the chain was by some process at Chicago. The evidence is to the effect that the defendant had no means of making the test at Chickasha.

We have examined the authorities cited by the defendant, as well as others, and have been unable to find a single authority making it the duty of the trial court, under evidence such as that in the instant case, to instruct the jury to return a verdict for the defendant. In M., K. & T. Ry. Co. v Shepherd, 20 Okla. 626, 95 Pac. 243, Dunn, J., delivering the opinion of the court, said:

"In cases involving the question of negligence, the rule is now settled that, 'when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the court.' "

To the same effect, see St. L. & S. R. Co. v. Loftis, 25 Okla. 496, 106 Pac. 824. In Frederick Cotton Mill & Mfg. Co. v. Traver, 36 Okla. 717, 129 Pac. 747, the rule is stated as follows:

"The defense of contributory negligence

under section 6, art. 23, of the Constitution, being made a question of fact to be determined by the jury, it is the duty of the court in such cases, where an instruction on this theory is asked, to instruct the jury that one who has negligently contributed to his own injury cannot recover, and a refusal to give such instruction when asked is error."

In 26 Cyc. 1177, it is said:

"While a servant does not assume the extraordinary and unusual risks of the employment, the rule is well settled, both in England and in this country, that on accepting employment he does assume all the ordinary and usual risks, and perils incident thereto, whether it be dangerous or otherwise, and also of risk which he knows, or may, in the exercise of reasonable care, know, to exist, unless there is some agreement to the contrary. He does not, however, assume such risks as are created by the master's negligence, or such as are latent or are only discovered at the time of the injury."

In Hailey-Ola Coal Co. v. Morgan, 39 Okla. 71, 134 Pac. 29, it is said:

"Contributory negligence in an action for damages on account of personal injuries, is a valid defense guaranteed under our Constitution and laws to every litigant, and is always a question of fact for the jury, and an instruction which in effect deprives a party of the full benefit of such a defense is erroneous."

In K. C., M. & O. R. Co. v. Roe, 72 Oklahoma, 180 Pac. 371, decided by this court April 15, 1919, Mr. Justice Rainey said:

"On the issue of assumption of risk by a servant who has sustained injuries, where the evidence is harmonious and consistent, and the circumstances are such that all reasonable men must reach the same conclusion, the question whether the plaintiff assumed the risk is one of law for the determination of the court; but where the facts are controverted, or are such that different inferences may be drawn therefrom, the question as to the assumption of the risk should be submitted to the jury under proper instructions from the court."

See St. L. & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436. Defendant complains of Instruction No. 6 given by the court, wherein the jury were instructed if they found from a fair preponderance of the evidence that the defendant furnished plaintiff with a weak and defective chain with which to lift the cone mentioned, and that by reason of furnishing such weak and defective chain, the plaintiff was injured thereby, the defendant was guilty of negligence. This was purely a question for the jury. They were to pass upon the question as to whether or not the defendant furnished the plaintiff with a chain reasonably suited for the work, and if

the jury found from a preponderance of the evidence that the defendant failed in this duty and that the plaintiff was injured thereby, then it was their duty to return a verdict in favor of the plaintiff. While the courts have held that common every-day tools do not require inspection, the duty to inspect is generally held to apply to complex machinery, which is not open to the inspection of an employe at a glance, but which requires special facilities or time to disclose the defects. Such every-day tools as hammers, saws, axes, wrenches, spades, hoes, shovels, rakes, etc., are considered to be simple tools and within the scope of the doctrine excusing the master from an inspection of the same. The reason of the rule holding that the servant assumes the risk of injury by the use of simple tools is based on the ground that the servant, in looking at the tools, can ascertain as well as the master whether or not they are defective. In the case at bar, the plaintiff testified that he looked at the chain and it appeared all right. We do not see how by an inspection, even if every link had been carefully examined, the defect could have been discovered. The weakness consisted in the failure of the chain to lift the weight guaranteed, to wit, 2,000 pounds.

In the case of Interstate Compress Co. v Arthur, 53 Okla. 212, 155 Pac. 861, Mr. Justice Hardy laid down the rule as follows:

"The master is bound to exercise reasonable care and diligence to provide a reasonably safe place in which the employe or servant is to work, and also reasonably safe machinery, tools, and appliances with which to perform the work required of him."

See Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 658. In the case of C., R. I. & P. R. Co. v. Wright, 39 Okla. 84, 134 Pac. 427, Mr. Justice Sharp, in summing up the authorities, declared the law to be as follows:

"A servant has the right to assume, in the absence of knowledge to the contrary that the master has discharged its duty in providing and maintaining reasonably safe and suitable machinery, and hence is under no obligation to inspect the machinery for latent defects."

And, further, in declaring the duty of the master, he states:

"So that the liability of defendant did not terminate upon its furnishing to the plaintiff in a safe condition the engine upon which he was employed, but it was its further and equally positive duty to keep said engine in a reasonably safe condition."

There is no evidence that the chain used by the plaintiff had at any time, after reach-

ing the shop, been used for lifting any weight. Being marked with 2,000-pound capacity, the plaintiff was justified in assuming that the chain had been properly tested, and that he was perfectly safe in attempting to lift the cone weighing 1,000 to 1,200 pounds.

Defendant complains that Instructions Nos. 6 and 9, given by the court, are inconsistent. The 9th Instruction has been quoted above. The 6th Instruction is as follows:

"When plaintiff went into the service of defendant, he assumed all risks ordinarily incident to his employment, but he did not assume the risk of defendant's negligence, if any, unless he knew of the same, or must necessarily have known of same by reason of his employment."

We fail to appreciate the inconsistency in these instructions when construed in connection with each other, together with the other instructions and the evidence adduced at the trial. The rule appears to be thoroughly settled that the servant does not assume the risk growing out of the negligence of the master, unless, as stated in the instruction, he knew of the same, or must have necessarily known of the same by reason of his employment. Did the plaintiff have any reason to believe that the chain furnished by defendant was not as represented? When the defendant delivered this chain to the plaintiff, no patent defect appearing, it, in effect, said: "This chain has been tested, it is guaranteed to lift 2,000 pounds, and anyone in the employment of the defendant may safely depend upon the strength of the chain to bear 2,000 pounds." Besides, there is no evidence that the chain was rusty or that there was any defect in any portion thereof further than that the same broke when used in attempting to lift the cone weighing 1,000 or 1,200 pounds. We fail to see any error in the court's instructions, but, on the contrary, are of the opinion that the same fairly and clearly covered all the issues in the case. The defendant contends that the verdict of the jury was the result of prejudice and passion. The evidence discloses that the plaintiff was a skilled mechanic, 34 years of age, with a life expectancy of 33 years. At the time of the injury, he was earning from $125 to $148 per month. After the injury, he was not able to perform any work for a period of twelve months. During that time he was in the hospital in Chicago, receiving treatment on account of his injury. He testified that his earning capacity had been reduced at least one-third; three of his fingers had been rendered stiff and could not be opened and shut. This stiffness in his fingers interfered materially with his work as a machinist; his

third finger was nearly off; the knuckle on the second finger was mashed into bits; he suffered for a whole year great pain while the physicians were operating and working on his hand. During cold weather, or when he struck his hand, or when his hand came in contact with any object suddenly, it gave him great pain, and on cold mornings, his hand was stiff and he could not do much with it until it was warm. Upon cross-examination, the plaintiff testified that since the injury he had worked in different machine shops and in repairing automobiles, and had received for his work the same price per hour as before the injury.

Instruction No. 5, given by the court, is as follows:

"If you find for the plaintiff, you will assess his damages at such an amount as if paid now would render him a reasonable and fair compensation for his pain and suffering, if any, occasioned by the injury, and his loss of time, if any, to the present, and his diminished capacity, if any, to earn money hereafter occasioned by reason of said injury, not to exceed $20,000."

The defendant does not complain of this instruction. As an appellate court, we have no means of knowing the degree of suffering and pain endured by the plaintiff, the jury being in a much better position to judge this question. They had the plaintiff before them, they heard him testify, and saw the condition of his hand. They heard him state how careful he was compelled to be with his hand; that every time it suddenly came in contact with a foreign object, he was made to suffer great pain. They, no doubt, considered that while he could still earn as much wages doing certain kinds of work as he had earned before the injury, he was constantly subjected to pain. The jury could further observe the awkward manner in which plaintiff would be forced to hold tools while working, and the injury being permanent, he would have to go through life in a maimed condition. As was well said in the case of Truman v. K. C., M. & O. R. Co. (Kan.) 161 Pac. 587:

"It would be impossible to recount all the factors which enter into the common and general notions of what is fair and just as a basis to measure the damages for personal injuries. There can be no absolute standard to measure such damages, and a wide latitude of discretion is necessarily left to the good sense and discretion of the jury which fixes the award."

Under all the evidence in the case, we cannot agree with defendant in saying that the verdict of the jury is the result of passion and prejudice. The trial judge, who heard

all the evidence and had an opportunity of seeing the nature and extent of plaintiff's injury, was of the opinion that a verdict for $15,000 was excessive and reduced the amount to $10,000. In the case of Frisco v. Hodge, 53 Okla. 427, 157 Pac. 61, Mr. Justice Sharp said:

"While in an action for personal injury a verdict will not be set aside for excessive damages, unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which damages are regulated, yet, where, from the size of the verdict, it is apparent that it was given under the influence of passion or prejudice, the court may direct a reversal of the case, or give the plaintiff the option to remit the excess and allow the judgment to stand as modified."

In the case of Ferris v. Shandy, 71 Oklahoma, 174 Pac. 1061, this court, speaking through Mr. Justice Hardy, announced:

"The rule for determining whether damages awarded are excessive is that they must be so large as to strike mankind at first blush as being beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have ben actuated by passion, partiality, prejudice and corruption. In short, damages must be flagrantly outrageous and extravagant, for the court cannot draw the line, having no standard by which to ascertain the excess."

To the same effect, see Ry. Co. v. De Vore, 43 Okla. 534, 143 Pac. 864.

The defendant next complains of error of the court in refusing to require the court reporter to take down the whole argument of the attorney for the plaintiff. Section 1786, Rev. Laws 1910, provides:

"It shall be the duty of the court reporter to take down in shorthand and to correctly transcribe when required, all the proceedings upon the trial of any cause, as well as all statements of counsel, the witnesses, or the court, made during the trial of any cause, or with reference to any cause pending for trial, when required by a party or attorney interested therein, and all other matters that might properly be a part of a case-made for appeal or proceeding in error. An attorney in any case pending shall have the right to request of the court or stenographer that all such statements or proceedings occurring in the presence of the stenographer, or when his presence is required by such attorney, shall be taken and transcribed. A refusal of the court to permit, or, when requested, to require any statement to be taken down by the stenographer, or transcribed after being taken down, upon the same being shown by affidavit or other direct and competent evidence to the Supreme Court, shall be deemed prejudicial error, without regard to the merits thereof."

This request on the part of defendant's counsel was on the theory that the arguments then about to be made by the attorney for plaintiff had been heard before in other cases similar to the case then being tried, and it was anticipated the same kind of argument would be made by counsel, which would be calculated to arouse the minds of the jury unfairly and prejudice them in the consideration of the questions involved in the trial. If this request on the part of the defendant's counsel had been granted, the defendant could not have been in the least benefited thereby, unless there was an objection to the entire argument, and if the objection only went to portions of the argument, it would have been necessary for the defendant to object at the time the objectionable matter was stated and have the court to rule upon the objections made. and then by timely exceptions, the errors could have been reviewed by being incorporated in the case-made. This appears to have been the view of the court in the case of Corliss v State, 12 Okla. Cr. 526, 159 Pac. 1015, wherein the court said:

"But when counsel for the defendant requests the trial court to have the stenographer take down in shorthand any statement made by the prosecuting attorney during his argument to be made a part of the record on appeal, and the court refuses or fails to comply with this request, then the fact of his request and the court's refusal may be shown by affidavit, or other competent evidence, and thus the refusal upon the part of the court so shown constitutes ground for reversal without regard to the merits of the case."

It will be noticed that the case last cited was a criminal case, which requires a stricter construction than in civil matters; however, the case of Dabney v. Hathaway, 51 Okla. 658, 152 Pac. 77, is practically the same, wherein it is said:

"Counsel relies upon section 1786, Rev. Laws 1910, in urging this assignment, but under that statute the statements which counsel had a right to have taken down are restricted to remarks concerning the cause appealed, and which 'might properly be made a part of the case-made for appeal or proceedings in error.'"

Considering the importance of this case and the issues involved, we have carefully examined the entire record, and conclude that no substantial errors were committed by the trial court. Section 6005, Rev. Laws, 1910, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or

as to error in any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

Section 4791, Id., provides:

"The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

We, therefore, conclude that the judgment of the trial court should be affirmed, and it is so ordered.

All the Justices concur, except HIGGINS and RAINEY, JJ., absent and not participating.