## TEXAS COMPANY v. ROBB.

No. 10809—Opinion Filed Jan. 23, 1923.

(Syllabus.)

### 1. Negligence—Question for Jury.

Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence, such question is properly for the jury, and it is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered as one of law for the court.

### 2. Negligence—Elements of Actionable Negligence.

The three constituent elements of actionable negligence are: (1) The existence of a duty on the part of the person complained against to protect the complainant from the injury of which he complains: (2) the failure of the defendant to perform that duty; (3) and the injury to the plaintiff resulting from such failure of the defendant

**3. Adjoining Landowners—Dangerous Premises—Care Required.**

A person owes to an adjoining property owner the duty to take such precaution and use such means to lessen the danger to the adjoining property as a man of ordinary prudence, conversant with the business, understanding its operation and the danger to adjoining property incident thereto, would have used or adopted for the purpose of preventing loss or injury to surrounding property.

**4. Negligence—Dangerous Instrumentalities —"Due Care."**

Reasonable care admits increased watchfulness and greater caution in proportion to the dangerous nature of the instrumentality employed, that is, due care means care which is reasonably commensurate with a known danger and the seriousness of the consequences which are liable to follow its omission.

**5. Oil and Gas — Damages to Adjoining Property from Burning Tank—Negligence—Evidence.**

Evidence examined, and held sufficient to be submitted to the jury upon proper instructions.

**6. Same—Instructions.**

Instructions examined, and held to fairly submit the issues to the jury.

**7. Negligence—Act of God — Concurrent Negligence—Liability.**

An act of God which will excuse from liability must not only be the proximate cause of the loss, but it must be the sole cause. If, however, the injury is caused by an act of God commingled with the negligence of the defendant as an efficient and contributing concurrent cause, and the injury would not have occurred except for such negligence, the defendant will be liable.

Error from District Court, Payne County; John P. Hickam, Judge.

Action by C. J. Robb against the Texas Company for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

John R. Ramsay, B. W. Griffith, and Sol. H. Kauffman, for plaintiff in error.

J. M. Springer and E. G. Wilson, for defendant in error.

COCHRAN, J. This action was commenced in the district court of Payne county, Okla., against the Texas Company for damages to property of the plaintiff caused by the escape of oil from one of the tanks located on the defendant's tank farm, and also damages caused by the heat from the burning oil. Judgment was rendered for the plaintiff for $500, and defendant has prosecuted this appeal.

The defendant contends that there was no showing of primary negligence, hence a verdict should have been directed for the defendant. A large part of the argument of the defendant on this proposition consists of a discussion of the doctrine set out in the case of Rylander v. Fletcher, Eng. Rul. Cas., vol. 1, p. 236; in which it is held:

"That one who for his own purpose brings on his own land an artificial substance and collects and keeps it there, anything that is likely to do mischief if it escape, must keep it at his own peril."

It is not necessary for this court to determine how that doctrine will be applied in the proper case. The courts of this country, which have followed the above doctrine, have, as a rule, done so in cases where the article collected, or the business conducted, by reason of its peculiar character, created a nuisance, and they have held in such cases that the question was not one of injury for negligence, but consequential damages from a nuisance.

In the case at bar the trial court instructed the jury that negligence on the part of the defendant must be shown in order to entitle plaintiff to recover, and, inasmuch as this theory was favorable to the plaintiff in error, it is not now necessary to determine whether the storage of large quantities of crude oil in the manner described in the record created a nuisance. We shall, therefore, examine the record to ascertain whether there was a sufficient showing of primary negligence to entitle the case to go to the jury. This court has several times stated the rule as follows:

"Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury, and it is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered as one of law for the court." Town of Watonga v. Morrison, 78 Okla. 74, 189 Pac. 737; Dickinson v. Granberry, 71 Oklahoma, 174 Pac. 776; Dickinson v. Whitaker, 75 Okla. 243, 182 Pac. 901.

In the case of Town of Watonga v. Morrison, supra, the court states the three constituent elements of actionable negligence to be:

"The existence of a duty on the part of the person complained against to protect the complainant from the injury of which he complains; the failure of the defendant to perform that duty; and the injury to the plaintiff resulting from such failure of the defendant."

The pleadings in this case presented the question of damage caused by the careless and negligent erection and construction of oil tanks, in that defendant, knowing the inflammable condition and nature of the oil stored in said oil tanks, erected tanks of 60,000 barrels capacity in close proximity to the improvements on the plaintiff's property, and the negligence of the defendant in allowing the oil to escape from one of the tanks on to the property of the defendant, which was adjacent to the property of the plaintiff. Conceding, without deciding, that the oil stored in the manner shown in the record in this case was not a nuisance, the duty of the defendant in constructing and operating the tank farm was to take such precaution and use such means to lessen the danger to adjoining property as a man of ordinary prudence, conversant with the business, understanding its operation and the danger to adjoining property incident thereto, would have used or adopted for the purpose of preventing loss or injury to surrounding property. Such being the duty, are there sufficient facts shown by the evidence from which reasonable men might draw different conclusions respecting the failure of the defendant to perform that duty?

The record shows that defendant had constructed three large steel tanks for the storage of crude oil, immediately across the road from plaintiff's property, only a section line road separating the premises of the defendant from those of the plaintiff; that the middle tank was filled with 60,000 barrels of crude oil, and was struck by lightning, which caused the oil to ignite; and that this tank was built only a few feet from the section line road and was surrounded by an earthen embankment six or eight feet high. This embankment on the side toward the plaintiff's property abutted on the section line road, and was only a few feet from the steel tank. As soon as the fire was discovered, three holes were shot near the bottom of the tank, which permitted a portion of the oil to run from the tank into the earthen tank surrounding it. A portion of this oil which ran out in the earthen embankment escaped therefrom and ran across a portion of the property belonging to the plaintiff. After the oil had been burning for something over four hours, the oil on the inside of the tank boiled over. The heat from the burning tank and from the burning oil in the earthen tank was intense and caused damage to the property of the plaintiff. Soon after the fire was discovered, defendant's superintendent brought a large number of men and teams

and threw up secondary embankments. These embankments were first constructed between the tank and the schoolhouse, but when the tank boiled over, a large quantity of the oil was carried toward plaintiff's property, and they began the construction of these secondary embankments between the tank and plaintiff's improvements, and continued the construction thereof until the heat became so intense that they could work no longer. The testimony of the defendant's superintendent was that after the tank of oil had been burning for some time, gas would be created under the oil which could throw the oil out, and that he had known burning tanks of the size of the one in this case to throw out 10,000 barrels of burning oil at one shot, and that he had known of its being carried a distance of 600 feet. He also testified that one might be building his secondary embankments on one side, and the wind might change around and carry the oil in the other direction, so that one could never tell which way the oil would be carried. This evidence was sufficient to permit the case to go to the jury on the question of the failure of the defendant to use due care and caution in the construction and erection of its tanks, and the court cannot say as a matter of law that the above facts did not constitute a failure of duty on the part of the defendant.

The same is true in regard to the alleged negligence of the defendant in permitting the oil to escape from its premises. The fire wall between the steel tank and plaintiff's property was closer to the tank than the fire wall on the other side, and the defendant's superintendent constructed embankments between the schoolhouse and the burning tank instead of constructing the same between plaintiff's improvements and the tank, and it was a question for the jury to determine whether the oil which escaped on the premises of the plaintiff escaped from the earthen embankment or was carried by the wind as the burning oil boiled out of the steel tank, whether the earthen embankment was properly constructed, and whether, knowing the tendency of the burning oil under similar circumstances, the tank had been built in too close proximity to plaintiff's property, and whether the superintendent used reasonable care and prudence in the construction of the embankments between the schoolhouse and the tank instead of between plaintiff's property and the tank. All of these facts were such that a verdict for the plaintiff might reasonably and properly be based

thereon, and there was no error in submitting the same to the jury.

Defendant complains of the giving of instructions 3 and 12. These two instructions must be considered in connection with instruction 4, and, when so considered, they state the duty of the defendant to be substantially as heretofore set out in his opinion, and require plaintiff to show breach of that duty before he could recover. Defendant specially complains of that portion of instruction No. 12 which reads as follows:

"That the defendant will be required to take notice and knowledge of the dangerous and inflammable nature of crude oil."

This portion of the instruction was not wrong when taken in connection with the undisputed evidence of defendant's superintendent, which was as follows:

"Q. The oil, as I understand it, is very inflammable, highly inflammable? A. Yes, sir; in the natural crude state. Q. How does the oil act when the tank boils over? A. Explosion when the oil and gas emanate. It strikes that gas under the oil and throws the oil out. I have seen it throw out 10,000 barrels at one shot out of the tank, and this is liable to happen. You might be on the east side building your dike, and the wind might change around and when that comes out make a current of air that carries it to the north end, current of that hot air might form a vacuum and put it in the wrong direction from where you build your dikes, so you never can tell what way the wind will carry that oil from the way the wind is blowing it"

—and when taken in connection with the established rule which is clearly stated in the case of Brown v. West Riverside Coal Co. (Iowa) 120 N. W. 732, as follows:

"Reasonable care admits increased watchfulness and greater caution in proportion to the dangerous nature of the instrumentality employed, that is, 'due care' means care which is reasonably commensurate with a known danger and the seriousness of the consequences which are liable to follow its omission."

Under the testimony in this case, it was not improper for the court to instruct the jury that the defendant was required to take notice and knowledge of the dangerous and inflammable nature of crude oil.

Defendant insists further that the injury resulted from an act of God. This question was submitted to the jury under a proper instruction, following the rule by this court in M., K. & T. R. Co. v. Johnson, 34 Okla. 582, 126 Pac. 567, as follows:

"An act of God which will excuse from liability must not only be the proximate cause of the loss, but it must be the sole cause. If, however, the injury is caused by an act of God commingled with the negligence of the defendant, as an efficient and contributing concurrent cause, and the injury would not have occurred except for such negligence, the defendant will be liable."

We are of the opinion that the instructions as a whole correctly state the law of the case, and that the judgment of the trial court should be affirmed.

HARRISON, C. J., and JOHNSON, McNEILL, MILLER, NICHOLSON, and KENNAMER, JJ., concur.