### PADGETT v. McKISSICK et al.

No. 18670. Opinion Filed Sept. 10, 1929.

Harry Fair, Hal Crouch, Whit Y. Mauzy, and J. B. Coppedge, for plaintiff in error.

West, Gibson, Sherman, Davidson & Hull, for defendants in error.

HALL, C. This was an action by G. F. Padgett against W. H. McKissick, E. A. Shaw, and E. T. Baylock, doing business as the Peerless Supply Company. The action was for damages for personal injuries which the plaintiff received in a collision between a Ford truck driven by an employee of the defendants and a fire truck owned and operated by the city of Tulsa.

The case terminated on a demurrer to plaintiff's evidence. Therefore, we must consider the facts in the case to consist of all the inferences and conclusions which may reasonably be drawn from the testimony introduced by plaintiff together with the surrounding circumstances.

The facts regarding the proximate cause of the injury are substantially as follows: The plaintiff was a fireman employed on the fire department of the city of Tulsa. The fire truck was en route to a fire. The colliding vehicles were traveling in the same general direction. The plaintiff was standing on the left running board, and cranking a siren to give warning to the traffic of the approach of the fire truck. The Ford truck, which was owned and operated by the defendants and driven by one of their employ-

ees, was first seen by the driver of the fire truck about one block away; and while the testimony is somewhat conflicting, there is ample testimony in the record to show that the driver of the Ford truck looked around and saw the approaching fire truck, and failed to turn to the curb, but kept driving for some relatively considerable distance. The Ford truck was in the center of the street. Instead of driving to the curb, pursuant to the ordinances of the city and pursuant to safety, he drove across the street intersection, and a short distance further, and turned his car at about a 45 degree angle, and drove it beyond the curb line of the street, and into a triangular shaped area of ground which was covered with chat. At this place and at this point, the collision occurred. The left running board of the fire truck and the front end of the Ford truck collided. It appears that the driver of the fire truck waited until he got within about 15 or 20 feet of the defendants' truck and then drove into that area of ground covered with chat which was to the right of the street on which they were traveling. It is difficult to describe the positions of the street intersections near the scene of the accident, but the parcel of ground covered with chat, though no part of the street, lies within the street on which the vehicles were traveling, which was Second street, if Second street were defined by parallel lines. In other words, the area of land covered with chat constitutes a jog into Second street, and a person traveling eastward along Second street would drive into the chat unless he swerved his vehicle considerably to the left at the intersection of Second street and Kenosha street. Formerly there was a curb on that part of the area of land covered by the chat which bordered Second street and Kenosha street. The curb, however, had been removed. The parcel of land perhaps belonged to the Missouri, Kansas & Texas Railway Company.

There is evidence in the record which indicates that the driver of the fire truck intended to drive across the "chat" regardless of the conduct of the driver of the Ford truck.

The plaintiff received serious injuries.

At the close of the testimony offered by plaintiff, the defendants interposed a demurrer to the evidence, which demurrer was argued and fully considered by the court, and sustained, and judgment entered for defendants.

The only question presented here for review is whether or not the action of the

court was proper in sustaining a demurrer to the evidence. The plaintiff pleaded the ordinances of the city of Tulsa, which, among other things, give the right of way to fire trucks answering fire calls or alarms, and to certain other vehicles, and which ordinances require that on the approach of fire trucks, all traffic shall pull as nearly as possible to the curb on either side of the street. It is the further contention of the plaintiff that the driver of defendants' truck was monopolizing the street and refusing to respond to the fire bell or the siren howling the approach of the fire truck; and that due to the location of the street intersections and the heavy traffic on the street and the position of the Ford truck in the street, and the apparent arbitrary action of the driver of the Ford truck in not surrendering to the fire truck that portion of the street which the ordinances had provided in such cases for the momentary use of the fire truck, it became absolutely necessary that the fire truck pass or attempt to pass the defendants' truck on the right side thereof.

The defendants contend that it was the duty of the fire truck to stop when its driver saw that the truck intended not to surrender to the fire truck its share of the street; that is, that portion to which by right the fire truck was entitled. The defendants further contend that the plaintiff or the driver of the fire truck on which plaintiff was riding had no right to quit the street and drive over private property (the parcel of ground covered with chat), nor to attempt to pass defendants' truck on the right. These respective contentions raise somewhat complicated questions; but it is sufficient to say that the matter of the collision occurring on private property may be eliminated from consideration because both parties were on this area of private property when the collision occurred. Had the driver of the defendants' truck stopped his vehicle at the street line, where a curb was once erected but later removed, and had not driven upon the private property, the fire truck would have passed without interference.

The vital question presented is whether or not the conduct of the driver of defendants' truck was so willful or arbitrary in holding the road as against this emergency vehicle as would justify the fire truck in attempting to pass him on the right instead of the customary left. The statutes of this state, as well as the generally accepted rules of the road, require that motor-driven vehicles pass other vehicles only on the left side thereof, and then after giving proper and timely warning. By reason of this statute (section 10164, as amended by chapter 76, Session Laws 1927) and an almost universal custom, it is only in exceptional cases where an overtaking vehicle may be justified in passing another vehicle on the right side instead of on the left. Situations may arise, however, which would justify such action. For instance, suppose a slow-moving vehicle on only a two-way road monopolizes the center of the road, or the left side thereof, and refuses to obey the law and rules of the road to turn to the right after being properly signalled by an approaching vehicle. To say that this slow-moving vehicle might disobey the rules of the road and prevent the overtaking vehicle from passing without the passing vehicle committed a breach of duty, would be against the established rules in regard to legal liability.

The questions of the willful conduct or the arbitrary action of the driver of the vehicle overtaken, and the emergency or necessity of the overtaking vehicle in passing, are always questions for the jury in determining the existence of negligence and the proximate cause of an injury resulting from a collision of the vehicles in one passing the other, regardless of whether the attempted passage was on the right side or the left side of the vehicle overtaken.

The rule applicable to this case, and in all cases where the cause of action is predicated upon negligence, was well and clearly stated by this court in the case of City of Tulsa v. McIntosh, 90 Okla. 50, 215 Pac. 624, in the following language:

"The question of negligence, where there is competent evidence introduced from which reasonable men might draw different conclusions, is one for the jury, and under like circumstances the question of proximate cause is one for the jury."

Other recent cases are Freeman v. Vandruff, 126 Okla. 238, 259 Pac. 257; Sapulpa Refining Co. v. Sapulpa, Adm'r, 84 Okla. 93, 202 Pac. 780; Texas Co. v. Robb, 88 Okla. 150, 212 Pac. 318.

In the present case testimony was introduced which, if believed by the jury, tended to show that Protzman, the driver of the Ford truck, saw and heard the approaching fire truck and arbitrarily held the road until the fire truck had gotten within 15 or 20 feet of him. It was within the province of the jury to consider this testimony and to determine whether or not the conduct of Protzman was arbitrary or willful, and determine the necessity, if any, of the fire truck in passing the Ford truck on the right hand side.

It is a matter of common knowledge that many of the drivers of trucks, especially the larger ones, whose owners are not interested in retaining the good will of the public, seem to get comfort out of getting into the middle of the street or road, and to the driver of an approaching or overtaking vehicle, in effect, saying: "I am here; get me out if you can." In this connection, the Kentucky Court of Appeals, in the case of Ware v. Saufley, 194 Ky. 53, 237 S. W. 1060 (decided in 1922) appropriately said:

"A driver of a vehicle, either motor or otherwise, has no right to obstruct the public highway by occupying the center thereof. If in doing so the driver or occupant of such vehicle is injured, contributory negligence is available as a defense. Ordinarily, the driver of a buggy or team of horses will politely draw to the right side of the road, giving room for passage of other vehicles. But this is not so of the big motor trucks and busses, because they feel, in their weight and power, they are secure from injury from small vehicles of all kinds. They proceed upon the theory that might makes right, and thus do more to enhance the unpopularity of motor vehicles among the general public than any one other thing. Thus, they become and are veritable road hogs and an abomination in the sight of all considerate drivers of vehicles."

The cases of Piper v. Adams Exp. Co., 270 Pa. 54, 113 Atl. 562, decided in 1918; Mark v. Fritsch, 195 N. Y. 282, 88 N. E. 380, 22 L. R. A. (N. S.) 632, 138 Am. St. Rep. 800, decided in 1909; and Gautier v. Lange, 151 N. Y. S. 902, decided in 1915, support our conclusions in this case.

The theory upon which the demurrer to the evidence was sustained is reflected by the following remarks contained in the findings of the trial court:

"They were both, so far as the court can ascertain from the testimony, doing their duty and pursuing the even tenor of their way and near the accident the Ford was in front of the fire truck and the fire truck gave warning as testified to by the young man that was driving the Ford truck and after the warning was heard and after the fire truck was seen by the young man, he started to the curb and the fire truck was just a little too anxious to get to the fire and they started to drive around to the right of the Ford automobile and there is where the trouble occurred and they got into trouble."

Perhaps an additional inducement for the action of the court is disclosed by the somewhat ironical and indeed humorous remarks of the trial judge, as follows:

"These fire companies with these Cadillac and Lincoln cars ought to know better than to try to pass a Ford car on the right hand side. I have never known them to come out ahead in my life. A Ford always gets the best of them and that fire truck had no business running into that Ford car. The plaintiff contends that inasmuch as the Ford not only went to the curb but went beyond the curb, that that was negligent. Now, it has been my common observation and I so find from this testimony that a man, when he sees a fire truck coming, he will not only get off the street, but if there is 40 acres there, he will go there to get off the street. The demurrer is sustained."

For the reasons herein stated, the judgment of the trial court is hereby reversed, and the cause remanded for a new trial, with directions to proceed in accordance with the views herein set forth.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.