## OKLAHOMA GAS & ELECTRIC CO. v. WILSON.

No. 23738. March 5, 1935.

Rehearing Denied April 23, 1935.

Application for Leave to File Second Petition for Rehearing Denied June 11, 1935.

Thurman, Bowman & Thurman, for plaintiff in error.

Fred H. Reily and Joe H. Reily, for defendant in error.

PER CURIAM. Jewell Wilson, plaintiff, below, brought suit against Oklahoma Gas & Electric Company and J. F. Owens for death of her husband. The action against J. F. Owens was dismissed prior to trial. There was judgment for plaintiff, and Oklahoma Gas & Electric Company appeals.

Plaintiff alleged "that the proximate cause of the injury and death of her said husband was the manner in which said high line was constructed over said roadway and was constructed so low that it was liable at any time to come in contact with gin poles being used for the purposes aforesaid, and that the said defendant corporation, and the said defendant J. F. Owens, as president and operating official thereof, were guilty of negligence in causing said line to be constructed and maintained over said roadway, uninsulated and at such a low distance from the ground that trucks and the gin poles used by them in such work was liable to, and would, come in contact with said electric wires. * * * That it was necessary to raise the gin pole of sufficient height in order that the pipe could be passed over the railroad switch and deposited at the place required. Thereby it was necessary to elevate the said gin pole to about 30 degree angle."

The answer was a general denial and a specific denial of responsibility for the death of plaintiff's husband; also, that the wires were constructed and maintained in compliance with the rules of the State Corporation Commission, and in the manner approved by electrical engineers; also, a plea of contributory negligence.

The reply was a denial of new matter.

The evidence disclosed that the deceased had worked in various oil fields for a number of years, and in the Oklahoma City field since it was opened. On the day he was killed he and fellow workmen were assisting employees of the owner of a truck with a gin pole on it to move some ten-inch pipe from a lease of his employer to a point on a roadway known as Frisco street, which was in the city limits, but had not been dedicated or graded as a street, but was used to some extent by the public without objection on the part of the owner. A "spur" track ran along the north side of this roadway.

Several years before the opening of the Oklahoma City oil field the defendant, with permission of the owner of the land, constructed its power line across his land. At the time of the accident this power line ran along the south side of Frisco street and the wires extended about three feet over the south side of the roadway.

Trucks with gin poles were common in the Oklahoma City field. Several days before and a few days after this accident a truck, with gin pole up, was seen to pass down Frisco street—apparently in safety.

On the day plaintiff's husband was killed one pipe had been brought to the place of the accident and lifted over, or upon, the embankment of the spur track by means of the truck and gin pole. He and the others

went back to the lease and tied two pipes to the winch line, lifted them clear of the ground by winding up the winch line, and secured them from swinging by attaching a chain to the poles and then fastening it to the truck. They then started to the place of the accident, the deceased and two others walking along behind the truck. On the way from the lease to the point of the accident one of the men said they would have to be careful or they would get into those hot wires. Deceased was as close to the speaker as the third man, who heard what was said, but could not say whether deceased heard it. There were warning signs visible on the poles of defendant.

When the truck reached a point opposite where one of the joints of pipe was to be deposited, it was driven as near as possible to the embankment and the driver "cut" the wheels and backed up so the back of the truck would be against the embankment. The two joints of pipe were then pulled higher and the men swung the pipe over on the embankment, and taking the winch line and chain from around one joint and then fastening the winch line around the middle of the other joint, and the loose chain around the end of such other joint, the loose end of the chain was left lying on the ground and across one rail of the track. The truck driver started the truck, when the hook in the free end of the chain caught on a rail and the winch line slipped toward one of the pipes. The driver stopped the truck and slackened the winch line, which was put back around the middle of the joint and tightened and the chain was unhooked from the rail. The truck was then driven forward, the driver at the same time raising the pipe three or four feet higher and Wilson catching hold of the free end of the chain to swing the pipe around so that the collar end would be in the right direction, and in so doing the gin pole either touched or came close enough to the power line for the current to be transmitted down to the pipe and chain and plaintiff's husband was electrocuted.

It is not disputed that the materials used in the power line and the clearance between the power line and the ground more than met the minimum requirements of the rules of the Corporation Commission of Oklahoma, as well as the National Electrical Safety Code promulgated by the Bureau of Standards of the United States government.

It was shown beyond dispute that the construction used by defendant was approved by electrical experts, and was the kind in general use all over the country by those in the electrical business, and by those people and electrical experts it was considered the best construction.

No attempt was made to show that defendant had any knowledge of the particular work deceased was doing, and it is undisputed that it was begun a very short while before the accident.

The vital issue is whether, under all the evidence, there is a showing of negligence on the part of defendant.

Negligence is never presumed, but must be alleged and proved. Missouri-Kansas-Texas R. Co. v. Sowards, 165 Okla. 219, 25 P. (2d) 647; Mead v. Chickasha Gas & Electric Co., 137 Okla. 74, 278 P. 286.

Three essentials must exist in actionable negligence: (1) A duty owing; (2) a breach of that duty; and (3) resulting injury. Chicago, R. I. & P. Ry. Co. v. Foltz, 54 Okla. 556, 154 P. 519.

The extent of the duty owing in this character of case, upon which must depend the answer to whether or not there was actionable negligence on the part of defendant, is thus stated by the Circuit Court of Appeals for the Eighth Circuit in the case of Canadian Northern Ry. Co. v. Senske, 201 F. 637:

"These authorities, and a multitude more, sustain the established rule that the standard of ordinary or reasonable care is that degree of care (1) which ordinarily prudent persons, (2) engaged in the same kind of business, (3) usually exercise under similar circumstances. It is plain that the care which extraordinarily cautious or unusually careless persons use would not be a correct standard. Nor would the care which prudent persons engaged in other kinds of business would use be the true standard. The care a farmer or merchant would deem proper, in the absence of evidence to guide him, and would use in running an engine, or building a bridge, would be no criterion of the ordinary care exercised by persons customarily engaged in those occupations. Nor would the degree of care that prudent persons use or would use under different circumstances furnish a just criterion of ordinary care under the circumstances of a given case. * * *

"The validity of the general abstract rule that the measure of care required of an employer is that degree of care which an ordinarily prudent man, engaged in the same kind of business, would have exercised under similar circumstances, is conceded. In cases like Texas & Pacific Ry. Co. v. Behy-

mer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905, and Chicago, Milwaukee & St. Paul Ry. Co. v. Moore, 166 Fed. 663, 92 C. C. A. 357, 23 L. R. A. (N. S.) 962, in which there is no proof of the degree of care which other ordinarily prudent persons engaged in the same kind of business commonly use, juries may measure the care required of a defendant by the application of this rule to other facts and circumstances in evidence before them. But the best evidence of the degree of care which ordinarily prudent persons would have exercised under given circumstances is the degree of care which ordinarily prudent persons, engaged in the same kind of business, customarily have exercised and commonly do exercise under similar circumstances. And, when the evidence of this degree of care is substantial or undisputed, it furnishes the true and the best standard of ordinary care by which that actually used should be measured in all debatable cases.

"What the true standard of ordinary care is in cases of this character is an exceedingly grave and important practical question to all employers and employees. It is very important that this standard should be as fixed, certain, and well known as possible, so that employers can know before the events whether or not they are exercising the requisite care and faithfully discharging their duties. The degree of care commonly exercised by other persons engaged in the same kind of business under similar circumstances presents such a standard. The opinions and verdicts of juries, no two of which would probably agree, fixing the standard by which to measure the employers' care after the events have happened, would necessarily be variant, uncertain, and speculative, and would furnish no reasonably certain standard of measurement whatever."

This court has announced the same rule in many cases. Talliaferro v. Atchison, etc., Ry. Co., 61 Okla. 27, 160 P. 69; Texas Co. v. Robb, 88 Okla. 150, 212 P. 318.

The record is undisputed that the materials, and the height of this wire, and its location were safe for all ordinary uses of Frisco street, for it is shown that cars and trucks, even with gin poles erected, went up and down the street without injury.

Plaintiff's evidence shows that the gin pole erected as at the time of accident (Exhibit 2) was 21 feet and 5 inches high.

It is undisputed that the wire at its lowest point was 24 feet and 3 inches from the ground.

Plaintiff pleads that to do the work it was necessary to elevate the gin pole to an angle of about 30 degrees. If so, the record shows without dispute that the gin pole (Exhibit 2) was raised very much higher than was necessary. Defendant cannot be required to anticipate any such condition. To so hold would be tantamount to holding it an insurer. The law only requires defendant to reasonably guard against probabilities, not possibilities.

In O'Neil v. Vie, 94 Okla. 68, 220 P. 853, this court said:

"Negligence must be shown by evidence, and the evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant, such that a reasonable person should have foreseen would, as a natural consequence, cause an injury; not necessarily would probably cause an injury in the sense of more likely to cause an injury than not, but the likelihood must be such that a reasonable person could foresee that injury would result in the ordinary course of things. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the act as one of its ordinary and probable results."

And again, in Cleveland v. Stanley, 155 Okla. 272, 9 P. (2d) 10:

"In order that an act of negligence may be deemed the proximate cause of an injury, it must be such that a person of ordinary intelligence would have foreseen that the injury was liable to be produced in the act. Chicago, R. I. & P. Co. v. Nagle, 55 Okla. 236, 154 P. 667."

When measured by these rules, it seems clear, and we so hold, that this record shows no actionable negligence of the defendant.

It follows that the trial court should have directed a verdict for defendant.

The judgment below is therefore reversed and judgment is here entered for the defendant.

The Supreme Court acknowledges the aid of Attorneys Richard K. Bridges, A. A. Davidson, and Lawrence Mills in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Bridges and approved by Mr. Davidson and Mr. Mills, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.