Delma Catherine RUDD, Administratrix of the Estate of Henry Charles Rudd, deceased, Plaintiff,

v.

PUBLIC SERVICE COMPANY OF OKLAHOMA, Tulsa, Oklahoma, Defendant.

Henry GANZE, Administrator of the Estate of Robert Ganze, deceased, Plaintiff,

v.

PUBLIC SERVICE COMPANY OF OKLAHOMA, Tulsa, Oklahoma, Defendant.

Civ. Nos. 3256, 3271.

United States District Court
N. D. Oklahoma.

Nov. 19, 1954.

claims for damages for alleged wrongful deaths arising out of the same accident wherein both decedents were electrocuted when a television antenna which they were erecting fell across an uninsulated high voltage wire of the defendant company. The case was tried to the Court, without a jury, and was taken under advisement at the close of all testimony. The issue before the Court is whether the defendant company was guilty of negligence in either failing to have the high voltage line insulated, or in failing to post a warning sign in the immediate vicinity advising of "high-voltage".[1]

The accident in question occurred in the City of Lawton, Oklahoma, upon premises owned by the decedent, Rudd, while the other decedent, Ganze, and a mutual friend of the decedents, were in the act of erecting an antenna to serve Rudd's home television set. The evidence further reveals that the high voltage line in question had been constructed some ten years prior to the time of the accident; that the west wire of the pole line of the defendant company was some 43 feet east of the northeast corner of the Rudd residence, where the antenna was to be fastened, and that the pole line was some 9½ feet east of the front property line of Rudd. The evidence further indicates that in raising the antenna to a vertical position the three men in question placed the bottom of the antenna against the south wheel of a trailer attached to a car which was parked in the Rudd driveway, the wheel being about 22 feet from the west wire of the defendant's pole line; and, that when the antenna was raised to an almost upright position, with no one holding the guy wires fastened near the top, the antenna got out of control and fell across the power line.[2]

Franklin S. Fitch and C. Maxwell Brown, Louisville, Ky., and Hudson, Hudson & Wheaton, Tulsa, Okl., for plaintiffs.

Doerner, Rinehart & Stuart, Tulsa, Okl., for defendants.

WALLACE, District Judge.

These two cases were consolidated for trial inasmuch as they involve

---

1. As observed in American General Ins. Co. v. Southwestern Gas & Electric Co., 5 Cir.1940, 115 F.2d 706, 708: " * * * An electric company must exercise reasonable care to avoid injuries, and take such precautions 'as the dangerous nature of its agency would render reasonably necessary and prudent.' Jacksonville Ice & Electric Co. v. Moses, 63 Tex.Civ.App. 496, 134 S.W. 379, 382; (citing other authority)."

2. According to the testimony of the survivor, Soehrman, the three men had intended to "walk" the antenna over to the northeast corner of the house once the antenna was raised to an upright position.

After carefully studying the facts and circumstances surrounding this accident the Court has concluded that the defendant-company was in no way guilty of negligence which brought on the instant tragedy.

 The evidence is uncontradicted that the high voltage line in question was constructed and maintained in a manner commensurate with standards recognized by those engaged in the electric power industry and that such construction and maintenance more than met the requirements of the Oklahoma Corporation Commission and the National Safety Code as promulgated by the U. S. Bureau of Standards.[3] Although compliance with such safety requirement does not of itself establish that the defendant company was free from negligence inasmuch as such a regulation is a minimum requirement to conform with the dictates of reasonable care, apart from unusual conditions the regulation stands as a reasonable guide in measuring due care.[4]

 A reading of the cases cited by plaintiffs and defendant shows beyond question that as a general rule a power company has no duty to insulate a power line such as the one in question;[5] or, to post signs warning of the existence of "high-voltage".[6] Although conditions could exist where due care either at the time of construction, or subsequent thereto, would require the insulation of such a line, or giving warning of the presence of high voltage, there are no facts before the Court which indicate that the defendant company should have constructed or maintained the power line in question in a manner any different from that used. As observed by the Oklahoma Court in Oklahoma Gas & Electric Co., v. Wilson, a case directly in point, "The law only requires defendant to reasonably guard against probabilities, not possibilities."[7] The Wilson

3. Said code requires that a non-insulated highline such as the one in question be at least 20 feet above the surface of the ground. The instant line at its lowest point was 24 feet 3 inches above the ground.

4. "Where a safety code is adopted by the state and constitutes a guide for electric companies, the construction and maintenance of a line in accordance with such code, constitutes prima facie evidence of the absence of negligence. (Citing authority.)" Probart v. Idaho Power Company, 1953, 74 Idaho 119, 258 P.2d 361, 364.

5. "Plaintiff also argues that defendant was negligent in not providing insulation for its wires. The undisputed testimony was that the type of covering used to protect these wires was customarily employed on high-voltage wires and that it was proper construction in accordance with the National Electrical Safety Code and good operating practice. In this connection we quote from Roberts v. Mississippi Power & Light Co., 193 Miss. 627, 637, 10 So.2d 542, 544: 'The duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires.'" Croxton v. Duke Power Co., 4 Cir., 1950, 181 F.2d 306, 308. See also Probart v. Idaho Power Company, foot note 4 supra, 258

P.2d at page 364; Sweatman v. Los Angeles Gas & Electric Corp., 1929, 101 Cal.App. 318, 281 P. 677; Oklahoma Gas & Electric Co. v. Wilson, 1935, 172 Okl. 540, 45 P.2d 750. Distinguish where power line only 8 to 10 feet from ground as in City of Marlow v. Parker, 1936, 177 Okl. 537, 60 P.2d 1044.

6. " * * * the plaintiff claims that defendant should have posted warning signs along its right of way. She argues that the weatherproof covering gave a deceptive appearance of insulation and that defendant was under a duty to warn persons who might be in the vicinity of its right of way that the wires were uninsulated and carried a dangerous voltage. Here again no duty arose unless the defendant knew, or reasonably should have known, that there was a danger of persons coming in contact with its wires. The wires here were so elevated above the ground that defendant cannot be charged with knowledge of this danger (citing authority)." Croxton v. Duke Power Co., footnote 5, supra, 181 F.2d at page 308.

7. Footnote 5, supra, 45 P.2d at page 753. The facts in the Wilson case were strikingly similar to those in the case at bar, in that the uninsulated high-voltage line, carrying some 13,000 volts, at its lowest point was 24 feet 3½ inches from the ground; the wires extended along a pub-

opinion goes on to vitiate the force of the argument urged by the instant plaintiff that the common use of television antennae in the city where this accident occurred put the defendant on notice that accidents would be likely if the company continued to maintain the power lines in an uninsulated condition, by stating:[8]

"The record is undisputed that the materials, and the height of this wire, and its location were safe for all ordinary uses of Frisco street, for it is shown that cars and trucks, *even with gin poles erected, went up and down the street without injury.*"

Likewise, in the instant case, although doubtless the defendant knew many antennae had been erected in the City of Lawton, such knowledge did not require a change in the defendant's manner of operation particularly since in the face of all these erections not one accident is reported to have happened prior to the instant case. Here, as in the case of the "gin pole" in the Wilson case, the *possibility* of an accident although present did not require the defendant power company to alter a construction and maintenance practice long recognized in the industry as conforming with reasonable care.[9]

Even had the Court found from the introduced evidence that the defendant company was guilty of negligence which was a proximate cause of the instant deaths, plaintiffs still would not be entitled to recover. The evidence conclusively establishes that the decedents themselves were guilty of negligence which contributed to their own injuries. This Court could but find that the three men in question in erecting the antenna were careless in attempting to raise an antenna of the length of the one in question supporting it solely at the bottom and failing to have at least one of their number steady the antenna by use of the guy wires already attached near the top of the antenna, and thereby make certain that the antenna would not fall into surrounding electric wires; and, such action was negligence conceding the presence of "high-voltage" was unknown inasmuch as reasonable care under the existing circumstances demanded that every precaution be taken to keep the aluminum antenna from coming in contact with the surrounding electric wires, regardless, of voltage.[10]

The defendant is entitled to judgment.

Counsel should submit a journal entry which conforms with this opinion within 15 days.

lic roadway of a city and had been constructed and maintained in conformity with the requirements of the Corporation Commission and recommended practice of the National Electrical Safety Code; and, the use of trucks carrying gin poles 30 feet in length was in common use in the area.

8. Footnote 5, supra, 45 P.2d at page 753.

9. As recognized in Sweatman v. Los Angeles Gas & Electric Corp., footnote 5, supra, 281 P. 678: " * * * The law does not require one who maintains even

so dangerous an instrumentality as a highly charged electric wire to anticipate, at his peril, every possible fortuitous circumstance under which some person might make a contact with such wire, resulting in injury or even death. Reasonable care, not insurance against every possible accident, is the measure of his liability."

10. See American General Insurance Co. v. Southwestern Gas & Electric Co., footnote 1, supra, 115 F.2d at page 708 as to negligence on the part of injured party.